**M. Douglas BERRY, Trustee in Bankruptcy, Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

**No. C–82–1162–G.**

United States District Court, M.D. North Carolina, Greensboro Division.

June 19, 1984.

N. Carlton Tilley, Jr., M. Douglas Berry, Greensboro, N.C., for plaintiff.

Richard F. Mitchell, Tax Div., Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM OPINION

ERWIN, District Judge.

This case is before the court on motions of defendant and plaintiff for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Both parties contend that there is no genuine issue of material fact and that each party is entitled to judgment as a matter of law.

### Statement of Facts

The parties basically agree as follows with reference to the facts in this case:

1. The plaintiff is the duly designated Trustee in Bankruptcy for the Estate of Joe Louis Caldwell, Bankrupt, a liquidating bankruptcy proceeding pending in the United States Bankruptcy Court for the Middle District of North Carolina, as Case No. 76–965, which proceeding was commenced on July 23, 1976 (Complt. ¶ 3).

2. On October 30, 1970, the bankrupt Joe Louis Caldwell, then a professional basketball player, executed an agreement with Southern Sports Corporation, which then operated the "Carolina Cougars" basketball team, whereby Caldwell agreed to perform services for Southern Sports Corporation for five years, that is, until October 29, 1975, in return for which Southern Sports Corporation would pay Caldwell a total of $1,100,000 payable on the dates and in the amounts as follows:

| | | |
|---|---|---|
| Upon execution | $ | 35,000 |
| January 15, 1971 | | 115,000 |
| January 15, 1972 | | 150,000 |
| January 15, 1973 | | 150,000 |
| January 15, 1974 | | 150,000 |
| January 15, 1975 | | 150,000 |
| January 15, 1976 | | 70,000 |
| January 15, 1977 | | 70,000 |
| January 15, 1978 | | 70,000 |
| January 15, 1979 | | 70,000 |
| January 15, 1980 | | 70,000 |
| TOTAL | $ | 1,100,000 |

A copy of this agreement is attached as Exhibit 1 to the plaintiff's complaint (Complt. ¶ 4).

3. On October 30, 1970, Theodore J. Munchak and Robert D. Gorham, Jr. guaranteed the contract obligations of Southern Sports Corporation to Joe L. Caldwell to the extent of $1,000,000. A copy of this irrevocable guarantee is attached as Exhibit 2 to the plaintiff's complaint (Complt. ¶ 5).

4. Pursuant to the afore-described agreement and guarantee, Theodore J. Munchak paid to the plaintiff Trustee $70,000 in each of the three calendar years 1977, 1978, and 1979 (Complt. ¶ 8).

5. The plaintiff Trustee filed federal fiduciary income tax returns which included the $70,000 payments specified in Paragraph 4 above as ordinary income, and paid (or received credit through withholding for) the amount of the tax liability reported on the returns, to wit:

| Taxable Year | Income Tax Paid |
|---|---|
| 1977 | $36,279.67 |
| 1978 | 23,816.07 |
| 1979 | 24,515.55 |

(Complt. ¶ 9.)

6. Thereafter the plaintiff filed amended federal income tax returns for the following years, showing an overpayment of income taxes and claiming a refund in the following amounts:

| Taxable Year | Claimed Overpayment |
|---|---|
| 1977 | $36,279.67 |
| 1978 | 23,816.07 |
| 1979 | 24,515.55 |

(Complt. ¶ 10.)

7. On November 18, 1982, the plaintiff Trustee commenced this action seeking a refund of those income taxes specified in the foregoing paragraph. In addition, the plaintiff Trustee contended that he had paid to the defendant the employee's share of FICA taxes (Social Security taxes) with respect to these 1977, 1978, and 1979 contract payments from Theodore J. Munchak, that he had filed claims for refund of said sums, and that he is entitled to a refund of said FICA taxes in amounts respectively of $965.25, $1,070.85, and $1,403.77 (Complt. ¶¶ 8, 14, 15).

8. The plaintiff Trustee contends that these contract payments by Munchak are deferred compensation payments received under a non-qualified deferred compensa-

tion arrangement which, pursuant to Revenue Ruling 60–31, would have been taxable income to Caldwell prior to 1976, and hence are not taxable, either as income or for FICA purposes, in the years 1977, 1978, and 1979 (Complt. ¶ 17).

9. Joe L. Caldwell reported his income, for tax purposes, on a cash receipts basis (Request to Admit No. 10, as admitted).

## Issues

Plaintiff contends that *two* issues exist in this case, to wit: (1) Does the receipt of a promise to pay that is secured require the "constructive receipt" of said employment compensation? (2) Is an irrevocable guarantee from a third party of a principal obligation "security" for the basic contract? On the other hand, the defendant contends that there is only *one* issue in this matter which is stated as follows: Are deferred cash payments pursuant to a service contract taxable to the recipient taxpayer in the year in which the payments are received? The court is of the opinion that the case should be resolved on this issue stated by the defendant, and the court answers the issue "Yes."

Treasury Regulations on Income Tax (1954 Code) (26 C.F.R.):

§ 1.451–1 General rule for taxable year of inclusion.

(a) *General rule.* Gains, profits, and income are to be included in gross income for the taxable year in which they are actually or constructively received by the taxpayer unless includible for a different year in accordance with the taxpayer's method of accounting. Under an accrual method of accounting, income is includible in gross income when all the events have occurred which fix the right to receive such income and the amount thereof can be determined with reasonable accuracy. Therefore, under such a method of accounting if, in the case of compensation for services, no determination can be made as to the right to such compensation or the amount thereof until the services are completed, the amount of compensation is ordinarily income for the taxable year in which the determination can be made. Under the cash receipts and disbursements method of accounting, such an amount is includible in gross income when actually or constructively received. Where an amount of income is properly accrued on the basis of a reasonable estimate and the exact amount is subsequently determined, the difference, if any, shall be taken into account for the taxable year in which such determination is made.

. . . .

(b) *Examples of constructive receipt*

Amounts payable with respect to interest coupons which have matured and are payable but which have not been cashed are constructively received in the taxable year during which the coupons mature, unless it can be shown that there are no funds available for payment of the interest during such year. Dividends on corporate stock are constructively received when unqualifiedly made subject to the demand of the shareholder. However, if a dividend is declared payable on December 31 and the corporation followed its usual practice of paying the dividends by checks mailed so that the shareholders would not receive them until January of the following year, such dividends are not considered to have been constructively received in December. Generally, the amount of dividends or interest credited on savings bank deposits or to shareholders of organizations such as building and loan associations or cooperative banks is income to the depositors or shareholders for the taxable year when credited. However, if any portion of such dividends or interest is not subject to withdrawal at the time credited, such portion is not constructively received and does not constitute income to the depositor or shareholder until the taxable year in which the portion first may be withdrawn. Accordingly, if, under a bonus or forfeiture plan, a portion of the dividends or interest is accumulated and may not be withdrawn until the maturity of the plan, the crediting of such portion to

the account of the shareholder or depositor does not constitute constructive receipt. In this case, such credited portion is income to the depositor or shareholder in the year in which the plan matures. However, in the case of certain deposits made after December 31, 1970, in banks, domestic building and loan associations, and similar financial institutions, the ratable inclusion rules of section 1232(a)(3) apply. See § 1.1232–3A. Accrued interest on unwithdrawn insurance policy dividends is gross income to the taxpayer for the first taxable year during which such interest may be withdrawn by him.

### Background Statements

In 1975, difficulties arose between Caldwell and the Cougars, and Caldwell was dropped, apparently from professional basketball. An involuntary bankruptcy proceeding was commenced against Caldwell in the Middle District of North Carolina on July 23, 1976. The bankruptcy proceeding remains pending, and the plaintiff in this case is the duly appointed Trustee in bankruptcy.

Pursuant to Section 70 of the since repealed Bankruptcy Act, the Trustee succeeded to Caldwell's rights under the Carolina Cougars contract and was paid $70,000 in each year 1977, 1978, and 1979, less withheld income taxes. These payments were made, not by the employing basketball club (Southern Sports Corporation), but instead by an individual guarantor, a distinction without a difference insofar as the federal income tax laws are concerned. Approximately twenty percent was withheld as income taxes and paid over to the Internal Revenue Service; and the trustee, asserting that he owed no taxes on these three annual $70,000 payments, filed claims for refund of amounts withheld. This suit followed.

### Discussion
*Salary Payments were subject to Income Tax in the Year of Actual Receipt.*

Pursuant to a personal services contract signed in 1970, Joe Louis Caldwell was to receive payments of $70,000 in 1977, 1978, and 1979. By virtue of the intervening bankruptcy, these payments were received instead by bankruptcy trustee. A bankruptcy trustee has a statutory obligation to file a tax return, to report the income received, and to pay taxes thereon at the applicable rate.

Section 61(a) of the Internal Revenue Code of 1954 defines gross income as *"all income from whatever source derived,* including (but not limited to) the following items: (1) Compensation for services, including fees, commissions, and similar items." (Emphasis added.) 26 U.S.C. § 61(a). The Trustee has the burden to show, as a legal matter, that these payments made pursuant to the 1970 contract do not constitute gross income to the bankruptcy estate in the years received.

Code Section 451(a) provides that unless some different method of accounting applies, an item of gross income is to be included for tax purposes in the year in which received by the taxpayer. No other rule applies to this individual taxpayer or the successor Trustee; as with any other cash basis taxpayer, the income items are includible in income in the year in which they are received by the taxpayer.

Regulations issued under Code Section 451 make this equally clear. *See* Treasury Regulations on Income Tax, Section 1.451–1(a), which reads in part: "Under the cash receipts and disbursements method of accounting, such an amount is includible in gross income when actually or constructively received." It is undisputed that the funds were actually received in the taxable years set out. There can be no doubt that if not taxable in an earlier year, these payments were taxable in the years received.

### Constructive Receipt

The plaintiff cannot claim that these $70,000 payments were taxable to the Trustee or to the bankrupt in some earlier year. These three $70,000 payments were not constructively received by Caldwell at some

point prior to the Trustee's receipt of the actual funds.

Constructive receipt of income is defined at Treasury Regulations, Section 1.451–2, as follows:

§ 1.451–2 Constructive receipt of income.

(a) *General rule.* Income although not actually reduced to a taxpayer's possession is constructively received by him in the taxable year during which it is credited to his account, set apart for him, or otherwise made available so that he may draw upon it at any time, or so that he could have drawn upon it during the taxable year if notice of intention to withdraw had been given. However, income is not constructively received if the taxpayer's control of its receipt is subject to substantial limitations or restrictions. Thus, if a corporation credits its employees with bonus stock, but the stock is not available to such employees until some future date, the mere crediting on the books of the corporation does not constitute receipt.

This regulation sets forth several examples of constructive receipt, none of which has any application to the case before the court. Caldwell was entitled to his $70,000 deferred payments on January 15, 1977, January 15, 1978, and January 15, 1979, and no earlier. Nothing was any earlier "credited to this account, set apart for him, or otherwise made available so that he may draw upon it" as required by Section 1.451–2. There was no trust fund, escrow account, or other device for Caldwell to draw against future salary payments. Caldwell was entitled to the money when he received it, and not before. There is no constructive receipt of income applicable here.

The Court of Appeals for the Fourth Circuit has stated:

From the cases and Regulations it is clear that income is taxable as constructively received when it is first available for the free and unrestricted use of the designated recipient, and this power to dispose of income as he wishes results in taxable income to the holder of the power.

*Hicks v. United States,* 314 F.2d 180, 185 (4th Cir.1963).

In a similar vein, the United States Tax Court has stated:

It is clear that the doctrine of constructive receipt is to be sparingly used; that amounts due from a corporation, but unpaid, are not to be included in the income of an individual reporting his income on a cash receipts basis unless it appears that the money was available to him, that the corporation was able and ready to pay him, that his right to receive was not restricted, and that his failure to receive resulted from exercise of his own choice. * * *

*Basila v. Commissioner,* 36 T.C. 111, 115–16 (1961), *quoting C.E. Gullett v. Commissioner,* 31 B.T.A. 1067, 1069 (1935). This is not a case of constructive receipts.

*The Principles of Constructive Receipt in Revenue Ruling 60–31 Are not Restricted to "Cash or Cash Equivalent" But Apply to the Broader Concept of "Income."*

The plaintiff states:

The basic assumption upon which the heart of the Defendant's argument rests is that the time of the receipt of "cash or cash equivalent" is the sole yardstick in applying the rules of constructive receipt. The specific wording of Tresury [sic] Regulations 1.451–2(a) dealing with constructive receipt refers only to "income". The general statutory language therefore does not support such a restrictive interpretation.

Revenue Ruling 60–31 sets forth the rules of constructive receipt in the area of deferred compensation agreements and does not support the plaintiff's position. This leading ruling in the field of deferred compensation agreements has been sustained by the courts. *See Goldsmith v. United States,* 586 F.2d 810, 815–18, 218 Ct.Cl. 387 (1978).

Revenue Ruling 60–31 notes with appropriate authority that "[a] mere promise to pay, not represented by notes or secured in any way, is not regarded as a receipt of income within the intendment of the cash

receipts and disbursements method," Rev. Rul. 60–31, 1960–1 C.B. 177, and proceeds to review when and under what circumstances certain contractual benefits may be treated as constructively received. Five examples are reviewed, and Examples (1) and (3) are analogous to the Caldwell contract. In neither Example (1) nor Example (3) nor the current case did the taxpayer have command and control of the funds in the earlier year, so that he could be said to have constructively received those funds. The payments were taxable when in fact received.

■ The plaintiff asserts that the descriptive phrase "not * * * secured in any way" set out above, confers some benefit upon him by way of converse implication. The theory is that if a naked promise to pay—not secured in any way—is not a receipt of income, then a promise secured in some way would be such a receipt. As the theory runs, the promise by Southern Sports to pay Caldwell was secured in some way, because the club's principals (Munchak and Gorham) guaranteed the salary. The court cannot agree. The guarantee itself is a mere promise to pay. No funds were set aside for Caldwell's benefit. No escrow or trust fund was established, nor was any lien or security interest established to assure his position. Caldwell had no control or command of funds or property, so the rule of constructive receipt does not apply.

### Conclusion

The payments received by the plaintiff for the benefit of the estate of Joe Louis Caldwell are not deferred cash payments pursuant to a service contract; therefore, the three payments for the taxable years 1977, 1978, and 1979 were properly taxed as provided for by law.

IT IS ORDERED that defendant's motion for summary judgment be and the same is granted. Plaintiff's motion for summary judgment is denied. A judgment will be entered accordingly.