T.C. Summary Opinion 2018-25

UNITED STATES TAX COURT

JOHN A. VOIGT AND LORINDA C. MARTIN, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15709-16S.                    Filed May 14, 2018.

John A. Voigt and Lorinda C. Martin, pro sese.

Rachel L. Gregory, for respondent.

SUMMARY OPINION

PANUTHOS, Special Trial Judge:  This case was heard pursuant to the

provisions of section 7463 of the Internal Revenue Code in effect when the

petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not

_____

[1]Unless otherwise indicated, subsequent section references are to the

(continued...)

reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

In a notice of deficiency dated April 18, 2016, respondent determined a deficiency of $6,903 in petitioners' 2013 Federal income tax and a section 6662(a) accuracy-related penalty of $1,211. After concessions,[2] the issue for decision is whether petitioners are entitled to exclude from taxable income the value of a tuition waiver benefit received during the year in issue.

## Background

Some of the facts have been stipulated, and we incorporate the stipulations of facts and their attached exhibits by this reference.

Petitioners resided in Virginia when the petition was timely filed.

---

[1](...continued)
Internal Revenue Code (Code) in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. We round monetary amounts to the nearest dollar.

[2]Respondent concedes the sec. 6662(a) penalty. The Internal Revenue Service (IRS) determined that petitioners failed to report the following items of taxable income: (1) a tuition waiver benefit of $21,575; (2) retirement income of $20,000; and (3) a dividend of $17. Petitioners concede the adjustments except that they assert that they are entitled to exclude the tuition waiver benefit from gross income. The remaining adjustment to the deduction for medical expenses is computational and will be resolved by the Court's conclusion on the taxability of the tuition waiver benefit.

Mr. Voigt (hereinafter petitioner) worked in the computer information services department of Tulane University (Tulane), a qualified education institution, from February 8, 1985, to June 7, 1991. Sometime in the 1980s Tulane began to suffer financial difficulties and established the Administrative Resources Analysis (ARA) task force to evaluate the effectiveness of their use of administrative staff. As part of a plan for streamlining and reorganization recommended by the ARA task force, Tulane reduced the workforce by approximately 100 employees. Each employee terminated under the ARA plan received a severance package which generally included: (1) payment of accrued vacation time, (2) severance pay dependent on length of service, (3) six months of health plan coverage, (4) assistance in seeking employment, and (5) an extended tuition waiver (extended waiver) policy.

Petitioner was informed that he would be terminated as part of the ARA process effective June 7, 1991, and received a separation notice. Preprinted terms in the separation notice included "Reason for Leaving", with various reasons numbered one through nine, such as "02 - Not Physically Able to Work" and "08 - Retirement, Pension", neither of which was selected. The separation notice showed petitioner's reason for leaving as "09 - Other (Please Explain)" and in the space provided stated "Elimination of Position". Petitioner did not voluntarily

leave his employment with Tulane, nor was he terminated on account of a disability.

Upon termination petitioner received a benefits summary titled "ARA Severance Benefits", which stated that he had six years of full-time service at Tulane and referred to an extended waiver policy for information regarding tuition waivers. Under the extended waiver policy if an employee had five or more years of full-time service, he or his dependents would receive "a total number of annual tuition waivers equal to the number of years of service" when certain qualifying events occurred. Qualifying events included termination as a result of the ARA process. The use of these tuition waivers was limited by stated requirements including that the applying student satisfy Tulane's admission guidelines.

After leaving Tulane in 1991 petitioner worked for Cornell University in New York for several years; employment at America Online and later self-employment followed. Petitioner did not work for Tulane in any capacity after 1991.

Petitioners' adult daughter, Gabrielle, attended Tulane as a full-time undergraduate student from fall semester 2012 through spring semester 2015. Petitioner filed applications for Gabrielle to receive tuition waivers as his dependent for the spring and fall semesters of 2013. On each application he

identified his eligibility for the waiver as "Laid Off - Benefits Package".[3]  On July 24, 2013, Tulane billed Gabrielle's account $21,575 for "Tuition Science-Engineering".  On August 6, 2013, Tulane applied a credit of $21,575 labeled "Waiver Science and Eng UG Dep" to Gabrielle's billing account.  In 2014 Tulane issued petitioner a 2013 Form W-2, Wage and Tax Statement, reflecting wages of $21,575, Social Security tax withheld of $1,338, and Medicare tax withheld of $313.  Petitioner also received a bill from Tulane for "2013 Waiver FICA Taxes" of $1,650.  Petitioners did not report the $21,575 on their 2013 Form 1040, U.S. Individual Income Tax Return.

Sometime before April 4, 2016, petitioner sent an email to Tulane inquiring about the 2013 Form W-2 he had received.  On April 4, 2016, Gisele Baham, Assistant Director of Payroll in Workforce Management Organization for Tulane, replied via email that "[b]ecause you were not an employee with the University, and you received the Tuition Waiver Benefit, the waiver is considered income to you".  On April 5, 2016, petitioner responded via email:  "Please send me something that shows my dates of employment when I was actually working for

---

[3]It appears that the tuition waiver for the 2013 spring semester was credited to Gabrielle's billing account on December 20, 2012, and the tuition waiver for the 2013 fall semester was credited to Gabrielle's billing account on August 6, 2013. Only the 2013 taxable year is before the Court; thus, we consider the tuition waiver for the 2013 fall semester.

Tulane as a staff member." On May 16, 2016, Ms. Baham responded via email: "Per your request; your dates of employment were 02/08/85-06/07/91."

In the notice of deficiency the IRS determined, among other adjustments, that petitioners failed to report the $21,575 tuition waiver benefit from Tulane as income for 2013. Petitioners timely filed a petition in which they assert that (1) the tuition waiver benefit is not taxable and (2) the IRS determined that a similar tuition waiver benefit was not taxable for 2012.

## Discussion

### I. Unreported Income

In general, the Commissioner's determination set forth in a notice of deficiency is presumed correct, and the taxpayer bears the burden of proving that the determination is in error. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Pursuant to section 7491(a), the burden of proof as to factual matters shifts to the Commissioner under certain circumstances. Petitioners did not allege or otherwise show that section 7491(a) applies. See sec. 7491(a)(2)(A) and (B).

In unreported income cases, the Commissioner must base the deficiency on some substantive evidence that the taxpayer received unreported income. Hardy v. Commissioner, 181 F.3d 1002, 1004 (9th Cir. 1999), aff'g T.C. Memo. 1997-97; see also Williams v. Commissioner, 999 F.2d 760, 763-764 (4th Cir. 1993)

(holding that the presumption of correctness applies in unreported income cases where the IRS employs a "reasonable method of determining income"), aff'g T.C. Memo. 1992-153. If the Commissioner introduces some evidence that the taxpayer received unreported income, the burden shifts to the taxpayer. Williams v. Commissioner, 999 F.2d at 763-764. The parties stipulated a 2013 Form W-2 issued by Tulane reflecting the amount of the tuition waiver benefit received in 2013, and petitioners confirmed that they received the tuition waiver benefit. Thus, the burden shifts to petitioners; and the only issue before us is whether the tuition waiver benefit is excludable from their taxable income. See Hardy v. Commissioner, 181 F.3d at 1004; Williams v. Commissioner, 999 F.2d at 763-764.

II.     Current Year Inclusion

At trial petitioner asserted that including the tuition waiver benefit as income in 2013 would be improper because the tuition waiver benefit represents "money that I earned 20 years ago". Petitioner appears to assert that this benefit should have been taxed in 1991. It is well settled that "[g]ains, profits, and income are to be included in gross income for the taxable year in which they are actually or constructively received by the taxpayer" regardless of when the services underlying such income were provided. Sec. 1.451-1(a), Income Tax Regs.; see also, e.g., Berry v. United States, 593 F. Supp. 80, 82-83 (M.D.N.C. 1984), aff'd,

760 F.2d 85 (4th Cir. 1985); Ames v. Commissioner, 112 T.C. 304, 312 (1999). The determination of whether a taxpayer has constructively received income ordinarily requires factual analysis. Ames v. Commissioner, 112 T.C. at 312-313. Constructive receipt of income occurs when the income is set apart and available for withdrawal by the taxpayer, but not when receipt is subject to substantial limitations or restrictions. Id.; see also Berry, 593 F. Supp. at 83-84; sec. 1.451-2(a), Income Tax Regs.

Tulane made six annual tuition waivers available to petitioner when he was laid off in 1991, but petitioner could not receive a tuition waiver benefit until he or his dependent satisfied Tulane's admission guidelines and enrolled in the university. This is a substantial limitation on his receipt of the tuition waiver benefit and precludes him from having constructively received it before it was redeemed against tuition actually charged. Thus, the tuition waiver benefit is properly included in gross income for 2013, the year in which the benefit was actually received, unless excludable from taxable income under another provision.

III.   Section 117 Exclusion

Gross income includes "all income from whatever source derived". Sec. 61(a). The scope of section 61(a) is broad, and exclusions from income are narrowly construed. See Commissioner v. Schleier, 515 U.S. 323, 328 (1995);

United States v. Burke, 504 U.S. 229, 248 (1992); Commissioner v. Glenshaw

Glass Co., 348 U.S. 426, 429-430 (1955). The taxpayer must demonstrate that he

is within the clear scope of any statutory exclusion. See Commissioner v.

Schleier, 515 U.S. at 336-337; Burke, 504 U.S. at 233; Simpson v. Commissioner,

141 T.C. 331, 338-339 (2013), aff'd, 668 F. App'x 241 (9th Cir. 2016).

Section 117(d)(1) provides that "[g]ross income shall not include any

qualified tuition reduction." To be a "qualified tuition reduction" the reduction in

tuition must be provided to an employee of a qualified education institution[4] for

the education, below a graduate level, at a qualified education institution of either

the employee or someone treated as an employee under section 132(h). Sec.

117(d)(2). Those treated as employees include former employees who separated

from service "by reason of retirement or disability" and the dependents of

employees.[5] Sec. 132(h).

---

[4]What is a qualified education institution is described by sec.
170(b)(1)(A)(ii).

[5]There are other categories of individuals treated as employees, including
spouses and widows of employees, which are not applicable in this case. See sec.
132(h).

The parties agree that (1) Gabrielle was petitioner's dependent in 2013, (2) Tulane is a qualified education institution, and (3) petitioner did not separate from service by reason of disability. Thus, the tuition waiver benefit received in 2013 is eligible for exclusion from gross income under section 117 only if petitioner was either a current employee of Tulane in 2013 or was treated as an employee because he had separated from service by reason of retirement under section 132(h).

Petitioners asserts that petitioner was an employee because he received a Form W-2. On the basis of the 2013 Form W-2 references to an "employer" and "employee", petitioner concluded that sometime in 2013 "Tulane University thought I worked there". The issuance of a Form W-2 does not create an employment relationship.[6] See Weber v. Commissioner, 103 T.C. 378, 386-387 (1994), aff'd per curiam, 60 F.3d 1104 (4th Cir. 1995). "Whether the employer-employee relationship exists in a particular situation is a factual question.

---

[6]A Form W-2 may be required even when there is no longer an employment relationship. For example, Social Security and Medicare taxes are imposed on wages as defined in sec. 3121. Sec. 3101. Wages for these taxes include payments for employment "even though at the time paid the relationship of employer and employee no longer exists". Sec. 31.3121(a)-1(i), Employment Tax Regs.; see also sec. 3121. When Social Security and Medicare taxes are required to be withheld, a Form W-2 must be provided. See sec. 6051; sec. 31.6051-1(b), Employment Tax Regs.

Common law rules are applied to determine whether an individual is an employee." Id. at 386 (citations omitted).

Petitioners did not present any evidence other than the 2013 Form W-2 issued by Tulane to prove that an employment relationship existed in 2013. Petitioners concede that petitioner did not work for Tulane in any capacity after his termination in 1991. Additionally, Tulane's records and the email from Ms. Baham confirm that petitioner has not been an employee of Tulane since 1991. Thus, we conclude that petitioner was not an employee of Tulane in 2013 as contemplated by section 117(d)(2)(A). See Commissioner v. Schleier, 515 U.S. at 336-337; Burke, 504 U.S. at 233; Simpson v. Commissioner, 141 T.C. at 338-339; Weber v. Commissioner, 103 T.C. at 386-387.

Petitioners assert in the alternative that since the term "retired" as used in section 132(h)(1) is not defined, that "'laid off' is just early retirement." Section 117(d) extends the exclusion of qualified tuition reductions from gross income to certain former employees by including those "treated as an employee * * * under the rules of section 132(h)." Sec. 117(d)(2)(B). The relevant provision requires the former employee to have "separated from service * * * by reason of retirement". Sec. 132(h)(1)(A). We must determine whether petitioner separated from service with Tulane "by reason of retirement".

The Code does not define the term "by reason of retirement". When the wording of a statute is "plain" it must be enforced according to its terms. King v. Burwell, 576 U.S. ___, ___ 135 S. Ct. 2480, 2489 (2015). Additionally, "[i]t is 'a cardinal principle of statutory construction' that a 'statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" TRW Inc. v. Andrews, 534 U.S. 19, 31 (2001) (quoting Duncan v. Walker, 533 U.S. 167, 174 (2001)). Black's Law Dictionary 1510 (10th ed. 2014) defines "retirement" as "[t]ermination of one's own employment or career, esp. upon reaching a certain age or for health reasons; retirement may be voluntary or involuntary." This definition's specific mention of termination of a career and special focus upon age or health as reasons for termination conforms with the ordinary meaning of the term "retirement" to refer to a time after an individual stops working.[7] To give meaning to the inclusion of the term "retirement" requires that we recognize that retirement is different from

---

[7]This ordinary meaning was adopted in the bankruptcy context when the Supreme Court of the United States used the definition of "retirement" from the American Heritage Dictionary, which is "[w]ithdrawal from one's occupation, business, or office." Clark v. Rameker, 573 U.S. ___, ___ 134 S. Ct. 2242, 2246 (2014) (alteration in original) (quoting Am. Heritage Dictionary 1489 (4th ed. 2000)). The Court held that the bankruptcy statute's reference to "'retirement funds' is therefore properly understood to mean sums of money set aside for the day an individual stops working." Id.

other methods by which an employee may separate from service, including being laid off; otherwise, the term "retirement" as used in section 132(h)(1)(A) is rendered superfluous or insignificant. See TRW Inc., 534 U.S. at 31.

Petitioner's assertion that he should be considered retired is not supported by the record: (1) Tulane identified "Elimination of Position" as the reason for leaving on his separation notice, even though retirement was a preprinted option; (2) petitioner's severance package included assistance in finding further employment, and a letter from the president of the Tulane explained that the terminations were a necessary response to "rapidly rising costs"; and (3) petitioner testified that he was laid off because Tulane was having "money troubles". For these reasons we conclude that petitioner's termination was not contingent on age, years of service, or health considerations. Additionally, petitioner continued to work for a variety of other employers and himself after he was laid off by Tulane. Thus, petitioner's separation from Tulane does not fit within the ordinary meaning of the term "retirement". See King, 576 U.S. at ___, 135 S. Ct. at 2489; Black's Law Dictionary 1510 (10th ed. 2014).

IV.  Conclusion

For the reasons stated above, we conclude that petitioner was not an employee of Tulane in 2013 as contemplated by section 117(d)(2)(A) or section

132(h).  Thus, the tuition waiver benefit received in 2013 is not excludable from petitioners' gross income under section 117(d).

Petitioners erroneously contend that they should be entitled to exclude the tuition waiver benefit from income for 2013 because such an exclusion was allowed for a prior taxable year.  Each taxable year stands alone, and the Commissioner may challenge in a succeeding year what was condoned or agreed to in a previous year.  Auto. Club of Mich. v. Commissioner, 353 U.S. 180 (1957); Rose v. Commissioner, 55 T.C. 28 (1970).

We have considered all of the parties' arguments, and, to the extent not addressed herein, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing, and respondent's concession of the section 6662(a) penalty,

Decision will be entered for respondent as to the deficiency and for petitioners as to the accuracy-related penalty under section 6662(a).