T.C. Memo. 2018-202

UNITED STATES TAX COURT

MARLON G. DASENT AND KENDRA WALCOTT-DASENT, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16003-16.                    Filed December 13, 2018.

Marlon G. Dasent and Kendra Walcott-Dasent, pro sese.

Olivia H. Rembach and Amy Dyar Seals, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

ASHFORD, Judge:  Respondent determined a deficiency of $65,235 in

petitioners' Federal income tax and an accuracy-related penalty pursuant to section

6662(a) of $12,378 for the 2014 taxable year.[1]  After concessions, the issues

_____

[1]Unless otherwise indicated, all section references are to the Internal

(continued...)

**[*2]** remaining for decision are whether petitioners (1) are entitled to deduct certain expenses they reported on their Schedule C, Profit or Loss From Business, (2) are entitled to a deduction for the unreimbursed employee business expenses they reported on their Schedule A, Itemized Deductions, (3) are liable for the 10% additional tax imposed by section 72(t) on early distributions from qualified retirement plans, and (4) are liable for the accuracy-related penalty. We resolve these issues in favor of respondent.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioners resided in North Carolina at the time the petition was filed with the Court.

I.      Petitioners

Mr. Dasent is a college graduate, having received a bachelor's degree in mechanical engineering from the Georgia Institute of Technology in 1995. During 2014 he worked at Britax Child Safety, Inc. (Britax), as a program manager.

---

[1](...continued)
Revenue Code in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. Some monetary amounts are rounded to the nearest dollar.

**[*3]**  Mrs. Walcott-Dasent is also a college graduate, having received a bachelor's degree in business administration from the American Intercontinental University in 2003.  During 2014 she worked at two different human resource consulting firms--Robert Half Corp. (Robert Half) and Randstad Professionals US LP (Randstad)--as a "virtual talent recruiter", performing her work solely out of her and Mr. Dasent's home.

During 2014 in addition to being a "W-2 wage earner" for Robert Half and Randstad, Mrs. Walcott-Dasent claimed to operate an education consulting business, assisting recent college graduates, military personnel reacclimating to civilian life, and at-risk women rejoining the workforce with finding suitable employment.  Mrs. Walcott-Dasent has never charged a fee for her services;[2] thus, for 2014 she had no gross receipts or other income attributable to her education consulting activities; she claimed to have incurred only certain expenses which, as discussed below, petitioners reported on a Schedule C.

Petitioners have two children who, during 2014, were in college:  a daughter enrolled at Western Carolina University (WCU) and a son enrolled at Belmont Abbey College (Belmont Abbey).

---

[2]Mrs. Walcott-Dasent has held herself out as operating an education consulting business for a "couple of years" before 2014.

**[*4]**  During 2014 Mr. Dasent received distributions totaling $25,622 from two different individual retirement accounts (IRA)--Northern Trust and ADP Retirement Services (ADP).  As of the close of that year he was under 59½ years of age.

Northern Trust and ADP sent the Internal Revenue Service (IRS) and Mr. Dasent Forms 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., for 2014, reflecting distributions of $7,865 and $17,757, respectively, as early distributions with "no known exception".  Each form also reflected a certain amount of Federal income tax withheld.

II.     Petitioners' Tax Reporting and the Notice of Deficiency

Petitioners prepared and timely filed (using TurboTax) a joint Form 1040, U.S. Individual Income Tax Return, for 2014 (joint return).  On the joint return petitioners reported wages totaling $162,823 from their employers, taxable refunds of $2,967, and unemployment compensation of $4,550.  They did not report Mr. Dasent's receipt of the IRA distributions.  They reported a $28,173 business loss from Mrs. Walcott-Dasent's education consulting business, which they detailed on a Schedule C attached to the joint return.  They also attached to the joint return a Schedule A, claiming $42,067 of itemized deductions.

**[\*5]** On the Schedule C petitioners reported no gross receipts and total expenses of $28,173. The expenses consisted of $2,200 for advertising, $11,834 for car and truck expenses, $2,003 for depreciation and section 179 expenses, $1,874 for legal and professional services, $2,016 for office expenses, $890 for supplies, and $7,356 for utilities.

On the Schedule A petitioners reported, among other items, $23,931 of unreimbursed employee business expenses. The details of their unreimbursed employee business expenses were shown on a Form 2106, Employee Business Expenses, and a Form 2106-EZ, Unreimbursed Employee Business Expenses, also attached to the joint return. The expenses consisted of the following: for Mrs. Walcott-Dasent in connection with her employment with Robert Half and Randstad: $6,358 for vehicle expenses, $4,170 for travel expenses, $7,195 for other business expenses, and $1,395 for meals and entertainment; for Mr. Dasent in connection with his employment with Britax: $320 for parking fees, tolls, and transportation, $2,220 for travel expenses, $1,810 for other business expenses, and $463 for meals and entertainment. Mrs. Walcott-Dasent may receive reimbursement for employee business expenses from Robert Half and Randstad, and Mr. Dasent was reimbursed by Britax for the mileage he drove his personal vehicle for work-related trips.

**[\*6]**   Following an examination of the joint return respondent determined that Mr. Dasent's IRA distributions totaling $25,622 were taxable and subject to the section 72(t) 10% additional tax, and that petitioners had income of $123,168 from the cancellation of debt.[3]  Respondent also determined that petitioners' Schedule A deduction for unreimbursed employee business expenses of $23,931 and their Schedule C business loss deduction of $28,173 should be disallowed for lack of substantiation.  Finally, respondent determined that petitioners were liable for an accuracy-related penalty for an underpayment attributable to a substantial understatement of income tax under section 6662(a) and (b)(2).[4]  The notice of deficiency mailed to petitioners on May 4, 2016, reflects those determinations.

Petitioners timely petitioned this Court for redetermination of the deficiency and the penalty.[5]

---

[3]Respondent has now conceded the cancellation of debt issue.

[4]The record includes a completed Civil Penalty Approval Form for the substantial understatement of income tax penalty for 2014.  The form includes a signature on the line provided on the form for "Group Manager Approval to Assess Penalties Identified Above" dated March 25, 2016, before the issuance of the notice of deficiency.

[5]Petitioners were represented by counsel when the petition was filed.  The petition states that petitioners concede all issues raised in the notice of deficiency except for the cancellation of debt and accuracy-related penalty issues.  Before trial the Court granted their counsel's request to withdraw.  Petitioners proceeded

(continued...)

**[*7]**                                        OPINION

I.     Burden of Proof

In general, the Commissioner's determinations set forth in a notice of

deficiency are presumed correct and, except for the burden of production in any

court proceeding with respect to an individual taxpayer's liability for any "penalty,

addition to tax, or additional amount", see sec. 7491(c), the taxpayer bears the

burden of proving otherwise, see Rule 142(a); Welch v. Helvering, 290 U.S. 111,

115 (1933). This burden of production and proof remains on the taxpayer even

with respect to the additional tax under section 72(t) because it is a "tax" and not a

"penalty, addition to tax, or additional amount" within the meaning of section

7491(c). See El v. Commissioner, 144 T.C. 140, 148 (2015) (citing Ross v.

Commissioner, T.C. Memo. 1995-599, slip op. at 12-15).

Tax deductions are a matter of legislative grace, and the taxpayer bears the

burden of proving entitlement to any deduction claimed. Segel v. Commissioner,

89 T.C. 816, 842 (1987). This burden requires the taxpayer to demonstrate that

the claimed deductions are allowable pursuant to some statutory provision and to

---

[5](...continued)
to trial pro sese and at trial disputed all issues raised in the notice of deficiency
except for the receipt of IRA distributions issue. Petitioners conceded in a
stipulation of facts and on the record at trial that Mr. Dasent received IRA
distributions totaling $25,622 during 2014.

[*8] substantiate the expenses giving rise to the claimed deductions by

maintaining and producing adequate records that enable the Commissioner to

determine the taxpayer's correct liability.[6]  Sec. 6001; Higbee v. Commissioner,

116 T.C. 438, 440 (2001); Hradesky v. Commissioner, 65 T.C. 87, 89-90 (1975),

aff'd per curiam, 540 F.2d 821 (5th Cir. 1976).

---

[6]We note, and as we observed supra p. 6, respondent determined that petitioners failed to report certain income.  In an unreported income case the IRS must provide some reasonable foundation connecting the taxpayer with the income-producing activity.  See Williams v. Commissioner, 999 F.2d 760, 763-764 (4th Cir. 1993), aff'g T.C. Memo. 1992-153; see also Weimerskirch v. Commissioner, 596 F.2d 358, 360 (9th Cir. 1979), rev'g 67 T.C. 672 (1977).  Once the IRS has produced evidence linking the taxpayer with an income-producing activity, the burden of proof shifts to the taxpayer to prove by a preponderance of the evidence that the IRS' determination is arbitrary or erroneous.  Helvering v. Taylor, 293 U.S. 507, 515 (1935).  Similarly, under sec. 6201(d), if a taxpayer in any court proceeding asserts a reasonable dispute with respect to any item of income reported on an information return, the IRS shall have the burden of producing reasonable and probative information concerning such deficiency, in addition to such information return.  Respondent conceded that petitioners do not have cancellation of debt income, see supra note 3, and we sustain respondent's determination that petitioners failed to report Mr. Dasent's IRA distributions as income because petitioners agree that Mr. Dasent received this income, see supra note 5.  Petitioners do not otherwise contend that the burden of proof should shift to respondent under sec. 7491(a) as to any relevant issue of fact, nor have they established that they met the requirements for shifting the burden of proof.

[*9] II.      Section 162 Deductions

Section 162 allows a taxpayer to deduct all ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. Sec. 162(a); sec. 1.162-1(a), Income Tax Regs. Generally, the performance of services as an employee constitutes a trade or business. Primuth v. Commissioner, 54 T.C. 374, 377 (1970). An expense is "ordinary" if it is "normal, usual, or customary" in the taxpayer's trade or business or arises from a transaction "of common or frequent occurrence in the type of business involved." Deputy v. du Pont, 308 U.S. 488, 495 (1940). An expense is "necessary" if it is "appropriate and helpful" to the taxpayer's business, but it need not be absolutely essential. Commissioner v. Tellier, 383 U.S. 687, 689 (1966) (quoting Welch v. Helvering, 290 U.S. at 113). An expense for which the taxpayer is entitled to (but does not claim) reimbursement from his or her employer generally is not considered "necessary" and thus is not deductible under section 162. Orvis v. Commissioner, 788 F.2d 1406, 1408 (9th Cir. 1986), aff'g T.C. Memo. 1984-533; Podems v. Commissioner, 24 T.C. 21, 22-23 (1955). Additionally, a taxpayer may not deduct a personal, living, or family expense unless the Internal Revenue Code expressly provides otherwise. Sec. 262(a). The determination of whether an expense satisfies the requirements of section 162 is a question of fact. Cloud v.

**[\*10]** Commissioner, 97 T.C. 613, 618 (1991) (citing Commissioner v. Heininger, 320 U.S. 467, 473-475 (1943)).

A.    Schedule C Trade or Business Expenses

Whether a taxpayer is engaged in a trade or business is a question of fact to be decided on the basis of all the relevant facts and circumstances. Stanton v. Commissioner, T.C. Memo. 1967-137, aff'd, 399 F.2d 326 (5th Cir. 1968); see also Higgins v. Commissioner, 312 U.S. 212, 217 (1941). Applying this facts and circumstances test, courts have focused on the following three factors indicative of whether a trade or business exists: (1) whether the taxpayer's primary purpose in undertaking the activity was for income or profit, (2) whether the taxpayer is regularly and actively involved in the activity, and (3) whether the taxpayer's activity has actually commenced. Jafarpour v. Commissioner, T.C. Memo. 2012-165, slip op. at 14 (first citing Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987); and then citing McManus v. Commissioner, T.C. Memo. 1987-457, aff'd without published opinion, 865 F.2d 255 (4th Cir. 1988)); see also sec. 183 (generally providing that if an activity is not engaged in for profit, then no deduction attributable to that activity is allowed). Focusing on the first factor, the taxpayer's profit motive, we accord greater weight to objective facts than to

[*11] subjective statements of intent. Keanini v. Commissioner, 94 T.C. 41, 46 (1990); sec. 1.183-2(a), Income Tax Regs.

Petitioners offered no credible, objective evidence to establish a profit motive for Mrs. Walcott-Dasent's education consulting activities. Indeed, she acknowledged at trial that she did not charge a fee for the services she performed in 2014 (or in any year in which she has held herself out as operating an education consulting business, for that matter). Likewise, petitioners did not attempt to rebut their return position for 2014 concerning Mrs. Walcott-Dasent's education consulting activities; to wit, that she had no gross receipts or other income and only allegedly incurred certain expenses. They produced no records--accounting records, invoices, and the like--traditionally associated with a business operating for profit. On the basis of the record, laudable as her activities may be, we conclude that Mrs. Walcott-Dasent was not engaged in carrying on a trade or business for profit under section 162. Under section 183(a) and (b) the deductions attributable to Mrs. Walcott-Dasent's education consulting activities are limited to the gross income she derived therefrom. Since she derived no gross income from those activities in 2014, petitioners are entitled to no deductions.[7]

---

[7]Sec. 183(b)(1) allows certain types of deductions that do not require a profit motive. Petitioners failed to establish that any of their claimed deductions

(continued...)

**[\*12]** B.    Substantiation of Schedule C Trade or Business Expenses

Even if we were to find that Mrs. Walcott-Dasent engaged in a trade or business for profit in 2014, we would ultimately deny the claimed Schedule C deductions for lack of substantiation.

As we indicated supra pp. 7-8, the burden of substantiating expenses rests with the taxpayer.  To this end, under the Cohan rule, if a taxpayer establishes that an expense is deductible but is unable to substantiate the precise amount, the Court may estimate the amount of the deductible expense, bearing heavily against the taxpayer whose inexactitude is of his or her own making.  See Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930); see also Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).  In order for the Court to estimate the amount of a deductible expense, the taxpayer must establish some basis upon

----

[7](...continued)
do not require a profit motive.  See secs. 162, 183(c).  Accordingly, they do not qualify for deductions under sec. 183(b)(1).  We also question whether Mrs. Walcott-Dasent's education consulting business was even a going concern, i.e., whether her education consulting business had actually commenced in 2014.  See Jackson v. Commissioner, 864 F.2d 1521, 1526 (10th Cir. 1989) ("Although the failure to make sales in a given period does not per se prevent a taxpayer from carrying on a business, * * * [the fact that the] taxpayers 'made [no] legitimate efforts to locate potential buyers * * * is fatal to taxpayers' case.  Merely possessing the legal capability to sell * * * by obtaining a license from the inventor, without actual efforts to sell the products, is insufficient to constitute carrying on a trade or business for purposes of section 162."), aff'g 86 T.C. 492 (1986); see also Kennedy v. Commissioner, T.C. Memo. 1973-15.

**[\*13]** which an estimate may be made. <u>Norgaard v. Commissioner</u>, 939 F.2d 874, 879 (9th Cir. 1991), <u>aff'g in part, rev'g in part</u> T.C. Memo. 1989-390; <u>Vanicek v. Commissioner</u>, 85 T.C. at 742-743. Otherwise an allowance would amount to "unguided largesse." <u>Norgaard v. Commissioner</u>, 939 F.2d at 879 (quoting <u>Williams v. United States</u>, 245 F.2d 559, 560 (5th Cir. 1957)).

The <u>Cohan</u> rule, however, is superseded--that is, estimates are not permitted--for certain expenses specified in section 274; to wit, traveling expenses (including meals and lodging while away from home), entertainment expenses, gifts, and "listed property" (including passenger vehicle) expenses.[8] Secs. 274(d), 280F(d)(4)(A)(i); sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985) (flush language); <u>see</u> <u>Boyd v. Commissioner</u>, 122 T.C. 305, 320 (2004). Instead, these types of expenses are subject to strict substantiation rules. <u>Sanford v. Commissioner</u>, 50 T.C. 823, 827 (1968), <u>aff'd per curiam</u>, 412 F.2d 201 (2d Cir. 1969); sec. 1.274-5T(a), Temporary Income Tax Regs., <u>supra</u>. These strict substantiation rules generally require the taxpayer to substantiate with adequate records or by sufficient evidence corroborating the taxpayer's own

---

[8]A taxpayer may deduct passenger vehicle expenses by using either actual cost or the standard mileage rate, provided he substantiates the amount of business mileage and the time and purpose of each use. <u>See</u> sec. 1.274-5(j)(2), Income Tax Regs.; Rev. Proc. 2010-51, 2010-51 I.R.B. 883.

[*14] statement (1) the amount of the expense, (2) the time and place the expense was incurred, and (3) the business purpose of the expense. Balyan v. Commissioner, T.C. Memo. 2017-140, at *7; sec. 1.274-5T(b), Temporary Income Tax Regs., 50 Fed. Reg. 46014-46015 (Nov. 6, 1985). For "listed property" expenses, in addition to the time such expenses were incurred and their business purpose, the taxpayer must establish the amount of business use and the total use of such property. Balyan v. Commissioner, at *7-*8; sec. 1.274-5T(b)(6)(i)(B), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).

Substantiation by adequate records requires the taxpayer to maintain (1) an account book, diary, log, statement of expense, trip sheets, or similar record prepared contemporaneously with the expenditure and (2) documentary evidence, such as receipts or paid bills, which together prove each element of an expenditure. Balyan v. Commissioner, at *8; sec. 1.274-5(c)(2)(iii), Income Tax Regs.; sec. 1.274-5T(c)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985).

On the Schedule C attached to the joint return petitioners claimed a deduction for the following expenses totaling $28,173: advertising, car and truck expenses, depreciation and section 179 expenses, legal and professional services,

**[*15]** office expenses, supplies, and utilities.  Respondent disallowed in full a deduction for all of these expenses.

The car and truck expenses are subject to the strict substantiation rules of section 274(d) and thus they cannot be estimated.  Petitioners produced a mileage log for 2014 prepared by Mrs. Walcott-Dasent.  This log reported only the months and year of her travel, the names of the events she attended, the cities of departure and destination, and the miles she drove.  It did not include a business purpose for the travel or the actual dates of travel.  Neither did petitioners retain or otherwise produce any documentary evidence relating to each event she attended in 2014.  Accordingly, we conclude that petitioners have not established for 2014 that they are entitled to a deduction for any amount of car and truck expenses under section 274(d) even if Mrs. Walcott-Dasent had engaged in a trade or business for profit in 2014.  See Fleming v. Commissioner, T.C. Memo. 2010-60, slip op. at 7.

With respect to the other expenses, we similarly conclude on the basis of the record that petitioners are not entitled to deductions for these expenses in any amount for 2014 even if Mrs. Walcott-Dasent had engaged in a trade or business for profit.  Petitioners produced bank statements, monthly expense summaries, and receipts from various corporations and companies.  A review of this documentary evidence shows that there is no distinction between petitioners' personal living

[*16] expenses, expenses Mrs. Walcott-Dasent incurred in connection with her education consulting activities, and expenses she incurred in connection with her employment with Robert Half and Randstad. In fact, at trial petitioners were unable to specifically identify which of the numerous expenses reflected in the bank statements, summaries, and receipts should be deductible under section 162. See Hale v. Commissioner, T.C. Memo. 2010-229, slip op. at 6 (stating that we need not sort through a taxpayer's evidence "in an attempt to see what is, and what is not, adequate substantiation of the items" on the taxpayer's returns). And thus, on the basis of the record before us, the Court is unable to make an estimate of these remaining expenses for 2014 under the Cohan rule. Accordingly, petitioners have not established that they are entitled to a deduction for any amount of the remaining expenses.

We sustain respondent's disallowance of petitioners' Schedule C business loss deduction for 2014.

C.     Schedule A Unreimbursed Employee Business Expenses

On the Schedule A attached to the joint return petitioners reported unreimbursed employee business expenses of $23,931 ($4,813 for Mr. Dasent in connection with his job as a program manager at Britax and $19,118 for Mrs. Walcott-Dasent in connection with her job as a virtual talent recruiter at Robert

**[*17]** Half and Randstad). Mrs. Walcott-Dasent's expenses consisted of vehicle expenses, travel expenses, other business expenses, and meals and entertainment. Mr. Dasent's expenses also consisted of travel expenses, other business expenses, and meals and entertainment, as well as parking fees, tolls, and transportation.

All but the other business expenses cannot be estimated as they are subject to the strict substantiation rules of section 274(d). In support of their vehicle expenses petitioners at trial produced a log for only Mr. Dasent which reported the months and year of his work-related travel, the business purpose of his travel, the cities of departure and destination, and the miles he drove. It did not include the actual dates of his travel. Petitioners did not retain or otherwise produce any other records to substantiate their Schedule A unreimbursed employee business expenses. Furthermore, the parties stipulated that Mrs. Walcott-Dasent may receive reimbursement for employee business expenses from Robert Half and Randstad. Neither did petitioners produce copies of their respective employers' reimbursement policies or otherwise establish that the expenses were not reimbursed by their employers.[9] In fact, at trial Mr. Dasent acknowledged that

---

[9]At trial Mrs. Walcott-Dasent testified that her reported unreimbursed employee business expenses were the expenses for which she could not get reimbursed. Although we found Mrs. Walcott-Dasent (as well as Mr. Dasent) to be genuine and candid, "[a]s we have stated many times before, this Court is not

(continued...)

**[*18]** Britax reimbursed him for the miles he drove his personal vehicle for work trips in 2014.

We sustain respondent's disallowance of petitioners' Schedule A deduction for unreimbursed employee business expenses.

III.    Additional Tax Under Section 72(t)

Section 72(t) imposes a 10% additional tax on early distributions from a qualified retirement plan (as defined in section 4974(c)).  See sec. 72(t)(1).  The 10% additional tax, however, does not apply to certain enumerated distributions.  See sec. 72(t)(2).  As relevant here, the additional 10% tax does not apply to the extent that early distributions are used for qualified higher education expenses of the taxpayer, his spouse, or his children in the year of the distribution.  See sec. 72(t)(2)(E), (7)(A).  Qualified higher education expenses generally include expenses for tuition, fees, books, supplies, equipment, and, in limited circumstances, room and board.  See secs. 72(t)(7)(A), 529(e)(3).

Mr. Dasent suggested at trial that petitioners qualify for this exception because they used his IRA distributions to pay for their daughter's tuition to WCU

---

[9](...continued)
bound to accept a taxpayer's self-serving, unverified, and undocumented testimony."  Shea v. Commissioner, 112 T.C. 183, 189 (1999) (citing Tokarski v. Commissioner, 87 T.C. 74, 77 (1986)).

[*19] in 2014. On the basis of Mr. Dasent's testimony the Court decided to hold the record open for the limited purpose of giving petitioners an opportunity to proffer evidence that the IRA distributions Mr. Dasent received were used to pay for qualified higher education expenses. On January 5, 2018, respondent filed a status report, apprising the Court of the documents he received from petitioners and attaching these documents thereto. The documents are: (1) a purported billing statement dated August 4, 2014, addressed to petitioners' son from Belmont Abbey, showing a current balance due of $14,956 for the fall 2014 semester; (2) a purported email from Nelnet Business Solutions (Nelnet) to Mrs. Walcott-Dasent dated "Wednesday, August, 4, 2014 3:57 AM", which states that a payment to Belmont Abbey of $14,956 is scheduled to be processed from her bank account on August 6, 2014;[10] (3) a purported email to Mrs. Walcott-Dasent from WCU dated "Friday, August 18, 2014 1:52 PM", which shows a payment of $5,500 from Woodforest National Bank (Woodforest Bank);[11] and (4) a purported email from Woodforest Bank dated "Friday, December 29, 2017 6:14 AM", which shows a bank statement from the bank for an unknown account that includes an "ACH--DEBIT" of $5,500 to WCU on August 15, 2014.

---

[10]August 4, 2014, is not a Wednesday but a Monday.

[11]August 18, 2014, is not a Friday but a Monday.

**[*20]** Respondent expresses concern as to the authenticity of the emails from Nelnet and WCU. We decline to receive these two documents as additional evidence but will receive the other documents. However, this additional evidence (and even the two emails for that matter) does not show that petitioners used any portion of the IRA distributions Mr. Dasent received to pay the tuition expenses of their daughter who was enrolled at WCU (or their son who was enrolled at Belmont Abbey) in 2014. On the record before us, we find that none of the enumerated statutory exceptions applies here and that all of Mr. Dasent's IRA distributions are subject to the section 72(t) additional tax.

IV. Section 6662(a) Accuracy-Related Penalty

We now address whether petitioners are liable under section 6662(a) and (b)(2) for an accuracy-related penalty on an underpayment due to a substantial understatement of income tax.

Section 6662(a) imposes a 20% accuracy-related penalty on any portion of an underpayment of tax required to be shown on a return if, as provided by section 6662(b)(2), the underpayment is attributable to any substantial understatement of income tax. The term "substantial understatement" means in the case of an individual an understatement of income tax that exceeds the greater of 10% of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1)(A).

**[\*21]** The Commissioner bears the burden of production regarding an individual taxpayer's liability for the accuracy-related penalty and thus is required to come forward with sufficient evidence indicating that imposition of the penalty is appropriate. See sec. 7491(c); Higbee v. Commissioner, 116 T.C. at 446. Once the Commissioner meets this burden, the taxpayer must come forward with persuasive evidence that the Commissioner's determination is incorrect. See Rule 142(a); Welch v. Helvering, 290 U.S. at 115; Higbee v. Commissioner, 116 T.C. at 447. Section 6751(b)(1) provides that "[n]o penalty * * * shall be assessed unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination or such higher level official as the Secretary may designate." In Graev v. Commissioner, 149 T.C. __, __ (slip op. at 13-14) (Dec. 20, 2017), supplementing and overruling in part 147 T.C. 460 (2016), we held that the Commissioner's burden of production under section 7491(c) includes establishing compliance with the supervisory approval requirements of section 6751(b).

The record includes a Civil Penalty Approval Form for the substantial understatement of income tax penalty for 2014, dated before the issuance of the notice of deficiency and signed by the immediate supervisor of the individual making the determination. As a result of the parties' concessions and the Court's

**[\*22]** holdings herein, the Rule 155 computations must confirm a substantial understatement of income tax by petitioners. Should the Rule 155 computations show a substantial understatement of income tax, we conclude that respondent has met his burden of production for the accuracy-related penalty under section 6662(a) and (b)(2) for 2014. The burden then shifts to petitioners to come forward with persuasive evidence that the penalty is inappropriate because, for example, they had reasonable cause and acted in good faith. See sec. 6664(c)(1); Higbee v. Commissioner, 116 T.C. at 446-447.

The determination whether the taxpayer had reasonable cause and acted in good faith depends upon the pertinent facts and circumstances of a particular case. Sec. 1.6664-4(b)(1), Income Tax Regs. We consider, among other factors, the experience, education, and sophistication of the taxpayer; however, the principal consideration is the extent of the taxpayer's efforts to assess the proper tax liability. Id.; see also Higbee v. Commissioner, 116 T.C. at 448. Taking into consideration the taxpayer's experience, education, and sophistication, an honest misunderstanding of fact or law may indicate reasonable cause and good faith. Higbee v. Commissioner, 116 T.C. at 449 (citing Remy v. Commissioner, T.C. Memo. 1997-72). In addition, reliance on professional advice may indicate reasonable cause and good faith if, in the light of all the facts and circumstances,

**[\*23]** such reliance was reasonable and the taxpayer acted in good faith. Id. at 448-449.

At trial petitioners, who have bachelor's degrees--one in business administration and the other in mechanical engineering--appeared sincere but confused, particularly about the tax treatment of the expenses they reported on their Schedules A and C and the IRA distributions that Mr. Dasent admitted receiving in 2014. They did not provide any testimony that they relied on advice from a tax professional when preparing the joint return. They used TurboTax to prepare the return. This Court has found that "[t]ax preparation software is only as good as the information one inputs into it." See Bunney v. Commissioner, 114 T.C. 259, 267 (2000). The software does not constitute professional advice for which this Court can rely in a reasonable cause/good faith analysis. Accordingly, we cannot find in the record either evidence of a cognizable effort to assess their proper tax liability or reasonable cause for the error. We will sustain the penalty should the Rule 155 computations confirm a substantial understatement of income tax.

We have considered all of the arguments made by the parties and, to the extent they are not addressed herein, we find them to be moot, irrelevant, or without merit.

**[\*24]** To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.