**Melvin WILLIAMS; Mary Williams, Petitioners–Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.**

No. 92–2385.

United States Court of Appeals, Fourth Circuit.

Argued May 4, 1993.

Decided July 14, 1993.

Joseph L. Gibson, Jr., Silver Spring, MD, argued, for petitioners-appellants.

John A. Nolet, Tax Div., U.S. Dept. of Justice, Washington, DC, argued (James A. Bruton, Acting Asst. Atty. Gen., Gary R. Allen, Kenneth L. Greene, on brief), for respondent-appellee.

Before MURNAGHAN and WILLIAMS, Circuit Judges, and BUTZNER, Senior Circuit Judge.

## OPINION

MURNAGHAN, Circuit Judge:

Taxpayers Melvin and Mary Williams have appealed the United States Tax Court's assessments of tax deficiencies against them. The Internal Revenue Service (IRS), using documents, cash and valuable items seized from the Taxpayers' residence in connection with a grand jury investigation of possible criminal violations of federal narcotics laws—an investigation that never yielded an indictment—applied the "source and application of funds method" to determine tax deficiencies for the years 1980 through 1984. The Taxpayers as Appellants have challenged the Notices of Deficiency as arbitrary and erroneous, claiming that the Commissioner of Internal Revenue failed to produce predicate evidence to connect them to the drug related activities that the IRS claimed generated the unreported illegal income. The Appellants also have claimed that the Notices of Deficiency disguised a criminal charge of drug distribution for which they had never been indicted by a grand jury. Consequently, they have contended, the determination of deficiency denied them due process of law.

## I.

Melvin Williams has a history of illegal drug activities which includes an arrest in 1963, a conviction in 1974 for conspiracy to distribute narcotics (resulting in a 15 year prison sentence), and a conviction in 1985 for attempting to possess cocaine with the intent to distribute in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

Evidence admitted at the criminal proceeding for his 1985 conviction established that in 1984 he had attempted to purchase four kilos of cocaine for $100,000 from an undercover agent. A witness who had turned state's evidence, Walter Robinson, testified at that trial that he began purchasing cocaine from the Taxpayer for commercial distribution in 1983, and that the Taxpayer employed the use of a beeper service to facilitate his drug distribution activities.

In 1984, in connection with another grand jury investigation of possible additional criminal violations of federal narcotics and tax laws, the IRS, agents of the Drug Enforcement Agency (DEA), and the Baltimore City Police seized various documents, cash, and valuable items from the Taxpayers' residence. Although there was no grand jury indictment, the IRS began to determine unreported income with respect to the 1980 through 1984 tax years. (Mary Williams had filed joint tax returns with Melvin Williams for 1981, 1982 and 1983, and was assessed deficiencies only for those years.) The IRS used the "source and application of funds method," which involved a computation of the Appellants' known sources of funds, and a calculation of their outlays of cash for major purchases, personal living expenses, investments, and bank deposits. Where the applications of funds exceeded known sources of funds, the difference was determined to be unreported income.

Notices of Deficiency were issued to the Taxpayers. The Notices included deficiencies in reported income as well as additions to tax consisting of fines for fraud and additions for substantial understatement of income. The Taxpayers timely petitioned for a redetermination. In an amended answer the Commissioner of Internal Revenue sought increased deficiencies.

At trial, the Tax Court heard evidence on the methodology used by the IRS to derive individual entries in their source and application of funds analysis. The Tax Court also admitted into evidence a transcript of testimony by Walter Robinson in response to questioning on direct examination at Melvin Williams' 1985 criminal trial. The testimony, admitted over hearsay objections, was intended to connect Melvin Williams to involvement in illegal drug activities in the early 1980's. The IRS could not produce Robinson himself as a witness, since he had been placed in the Federal Witness Protection Program as a result of his earlier testimony.

At the end of the testimony, the Appellants again objected to the introduction of the Robinson testimony, arguing that they had had no opportunity to cross-examine Robinson and that the exhibit offered by the Commissioner failed to include Robinson's cross-examination testimony at the 1985 trial. The parties then agreed to submit a joint exhibit that would include the trial transcript pages that contained Robinson's testimony both on direct and on cross-examination.

The Tax Court held that the Commissioner's determinations of unreported income were not arbitrary and that thus the burden was on the Taxpayers to show that the determinations were incorrect. In reference to the additional deficiencies noted in the Commissioner's amended answer, the Tax Court stated that generally the burden would be on the Commissioner to sustain the burden of proof on all "new matters" pleaded. However, it found that the Commissioner was not required in this case to bear the burden of proof under the new matter doctrine because the additional deficiencies noted in the amended answer derived from applications obtained by reexamining the original unreported income theory rather than from a new theory. Thus the amended answer with some additional calculations of deficiencies did not provide a true "new matter."

The Tax Court noted that given the circumstances of the case, the Commissioner was probably not required to produce predicate evidence connecting the Taxpayers to illegal activity in order to retain the pre-

sumption of correctness on the original Notice of Deficiency. It went on to find, however, that the Commissioner had introduced such evidence. The Tax Court also found the source and application of funds method used by the Commissioner to be reasonable. It then considered, item by item, the amounts disputed in the Commissioner's source and application of funds analysis, and upheld them in large part. Finally, the Tax Court sustained the additions to tax for fraud and substantial understatement. The Taxpayers' motion for Reconsideration was denied and the Taxpayers have appealed.

## II.

On appeal, Appellants have argued that there was an inadequate evidentiary foundation for the Commissioner's determinations of unreported income and that thus the Notices of Deficiency were arbitrary. They also have contended that the determinations were tantamount to a criminal charge brought forth by the Government in the form of a Notice of Deficiency, and therefore violated their Fifth Amendment right to indictment by a grand jury.*

■ A taxpayer is required to keep sufficient records to enable the Commissioner to determine his or her correct tax liability. In the absence of such records, the Commissioner may compute the taxpayer's income by any method that clearly reflects income. Where the taxpayer has failed to report amounts of income, and where available records are not sufficient otherwise to establish income, the Government may employ indirect methods. *See Sutherland v. Commissioner*, 32 T.C. 862, 866–67, 1959 WL 1050 (1959); *Holland v. United States*, 348 U.S. 121, 130, 75 S.Ct. 127, 133, 99 L.Ed. 150 (1954); 26 U.S.C. §§ 6001 and 446(b).

■ The Commissioner reconstructed the Taxpayers' income for the years at issue using the source and application of funds method, which has long been regarded as a reasonable method of determining income.

*See United States v. Johnson*, 319 U.S. 503, 517, 63 S.Ct. 1233, 1240, 87 L.Ed. 1546 (1943); *Taglianetti v. United States*, 398 F.2d 558, 562 (1st Cir.1968); *Meier v. Commissioner*, 91 T.C. 273, 295–96, 1988 WL 85980 (1988). The source and application of funds method, sometimes referred to as the cash expenditures method, is based on the assumption that the amount by which a taxpayer's applications of funds exceeds his known sources of assets and income is taxable income, absent some showing by taxpayer of a nontaxable source. The Commissioner's determinations, derived from the application of funds method and announced in the Notice of Deficiency, are presumed correct, and the taxpayer bears the burden of proving that the determinations are arbitrary or erroneous. *See Helvering v. Taylor*, 293 U.S. 507, 515, 55 S.Ct. 287, 79 L.Ed. 623 (1935); *Liddy v. Commissioner*, 808 F.2d 312, 314 (4th Cir.1986).

■ Consistent with the presumption of correctness of the Commissioner's determinations of deficiencies, the Tax Court generally will not look behind the statutory notice of deficiency to examine the evidence used, the propriety of the Commissioner's motive, the administrative policy, or the procedure followed in making the deficiency determination. *Anastasato v. Commissioner*, 794 F.2d 884, 886–887 (3rd Cir.1986); *Dellacroce v. Commissioner*, 83 T.C. 269, 280, 1984 WL 15606 (1984). However, some courts have declined to accord a presumption of correctness to the Commissioner's determination of unreported income (legal or illegal) where the Commissioner simply relies on the presumption without introducing any evidence linking the taxpayer to the income generating activity in question. *See Anastasato*, 794 F.2d at 887; *Gerardo v. Commissioner*, 552 F.2d 549, 554 (3rd Cir.1977).

"The evidence of record must at least link the taxpayer with some tax-generating acts, such as the purchase or sale of controlled

---

* The Appellants did not contest the Tax Court's analysis of the various individual determinations made by the Commissioner, nor revive the objections made at trial to those determinations. Also, they have made no argument that the bur-

den of proof for the additional calculations of deficiencies advanced in the Commissioner's amended answer should have been shifted to the Commissioner under the new matter doctrine.

substances." *Llorente v. Commissioner,* 649 F.2d 152, 156 (2nd Cir.1981).

The Appellants have charged that the Commissioner failed to establish a link between Melvin Williams and drug dealing, the activity alleged to have generated the unreported income. The failure to establish the link, they have claimed, has rendered the Notice of Deficiency arbitrary. Accordingly, the presumption of correctness is no longer applicable to the Notice of Deficiency and the burden of proof should shift to the Commissioner.

■ As the Tax Court noted, it is by no means clear that the present case is one in which evidence linking the taxpayer to an activity alleged to have generated the income must necessarily be introduced, to preserve the Commissioner's presumption of correctness. Such a requirement has traditionally been imposed in cases where the Commissioner has no evidence that the Taxpayer had actually received income during the periods at issue. For example, in *Weimerskirch v. Commissioner,* 596 F.2d 358, 361 (9th Cir. 1979), the court held that the Commissioner may not rely on a presumption of correctness of deficiency "in the absence of a minimal evidentiary foundation." Since the Commissioner in that case offered no evidence from which it could even be inferred that Taxpayer engaged in the sale of narcotics, introduced no records to substantiate the computations made by IRS, and made no attempt to support the charge of unreported income by "any other means such as by showing net worth, bank deposits, cash expenditures, *or source and application of funds,*" the Notice of Deficiency was arbitrary. *Id.* at 362 (emphasis added). *See also Portillo v. Commissioner,* 932 F.2d 1128, 1133 (5th Cir.1991) (Commissioner was not entitled to a presumption of correctness where the notice of deficiency lacked any "ligaments of fact" and the Commissioner relied solely upon naked assertion; "Commissioner would merely need to attempt to substantiate the charge of unreported income by some [ ] means, such as by showing the taxpayer's net worth, bank deposits, cash expenditures, or source and application of funds."); *Carson v. United States,* 560 F.2d 693 (5th Cir.1977) (single

$10 notebook entry and cryptic statement that review of the records seized from the taxpayer "revealed that taxpayer received wagers" did not provide the Commissioner with a presumption of correctness from the Notice of Deficiency "particularly where none of the records or other evidence introduced at trial by the government support[ed] such a revelation of wagering activities."); *Tokarski v. Commissioner,* 87 T.C. 74, 1986 WL 22155 (1986) (the presumption of correctness is not given effect in an unreported illegal income case and Commissioner must come forward with evidence linking the taxpayer to an income producing activity only where "there was no evidence that the Taxpayer had actually received anything during the period in issue.").

In contrast, in the present case, the record contained ample evidence that the Taxpayers received substantial amounts of unreported income, and nothing in the record has suggested that the unreported income came from nontaxable sources. Using the records and information seized from the Taxpayers and third parties, the Commissioner discerned—via the source and applications of funds analysis—an expenditure of funds during the years at issue far exceeding the amounts of reported income and nontaxable sources available to them. Since that method of reconstructing income in the absence of taxpayer records has been found to be reasonable and logical, and long approved by the courts, the evidentiary link to the specific activity alleged to have generated the income—illegal drug activities—was unnecessary.

■ Nevertheless, the Commissioner provided an ample link to drug dealing activity, which, in conjunction with the figures derived from the source and application of funds analysis, sufficed to support a presumption of correctness of the Notice of Deficiency. The evidence proffered by the Commissioner to show the link between Melvin Williams and illegal drug activity consisted of 1) record evidence of his 1985 conviction for attempting to possess cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 when he attempted to purchase four kilos of cocaine from a DEA agent

through Walter Robinson and 2) the transcript of the trial testimony by Robinson at Melvin Williams' 1985 criminal trial.

The record evidence of the 1985 conviction was enough of a threshold evidentiary link by itself to connect the Taxpayers with illegal drug activities during the period of time in question. *See Erickson v. Commissioner,* 937 F.2d 1548, 1555 (10th Cir.1991) ("the *Weimerskirch* line of cases was [not] intended to exempt narcotics dealers ... and create a safe haven for them, permitting them to be taxed on money in their possession only if they are caught in the act of buying or selling narcotics for a profit. We think connecting petitioner to the funds that form the basis of the deficiency is sufficient to give him the burden of proving the deficiency determination erroneous."). As the Tax Court noted, Melvin Williams was, in fact, caught in the act of drug dealing. He was serving his sentence at the time the Notice of Deficiency was served. In addition, moreover, contrary to the Appellants' claim, the transcript of Robinson's testimony in Melvin Williams' criminal proceeding established the necessary nexus between the Taxpayers and drug dealing activities.

The Tax Court admitted Robinson's testimony as an exception to the proscription on hearsay found in Rule 804(b)(1) of the Federal Rules of Evidence. Former testimony is admissible if the declarant is unavailable (*i.e.,* absent from the hearing and the proponent of the statement has been unable to procure the declarant's attendance by process or other reasonable means) if "the party against whom the testimony is now offered ... has an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." Fed.R.Evid. 804(b)(1).

The Taxpayers, while not contesting Robinson's unavailability, have claimed that they did not have an opportunity and similar motive to develop Robinson's testimony. They have argued that the cross-examination of Robinson at the 1985 criminal proceeding was not pursued with a motive similar to that motivating the Taxpayer at the Tax Court proceeding, so introduction into evidence of the transcript of Robinson's cross-examination would not cure the problem. In addition, the Taxpayers have contended that Robinson's testimony was itself hearsay and not admitted into the original criminal trial for the truth of the matter asserted. Finally, the Taxpayers have claimed, the introduction of the transcript of Robinson's testimony at the tax trial was error because the Taxpayers were not made aware, as is mandated by Rule 804(b)(5), that the Robinson transcript would be introduced.

Taxpayers' objections on appeal are to no avail. They made similar objections at trial, but at the conclusion of the trial agreed to submit to the court a joint exhibit that would include both the direct and cross-examination of Robinson within seven days. Through inadvertence, the joint exhibit was not submitted within the seven days, and the Taxpayers filed a motion in opposition to the Commissioner's request for permission to file it out of time. The Taxpayers claimed prejudice by the late filing, but did not elaborate, and the court denied the motion. As the appendix does not contain the transcript of the cross-examination, the Taxpayers' assertion that they had no similar motive to cross-examine Robinson goes unsubstantiated. The Taxpayers not only fail to present the evidence that might prove the point, but advance no support for the legal argument that the former testimony should not be admitted under Rule 804(b)(1).

We reject the Taxpayers' contention that Robinson's testimony cannot be used to establish a link with drug activities because it was not originally introduced to prove the truth of the matter asserted. First, the testimony came in as an exception under 804(b)(1), and therefore was properly used, in the criminal trial, to support the truth of the matter asserted—that is, that Robinson was involved in illegal drug activities. Second, the Robinson testimony was not relied upon by the Tax Court as substantive support for the Commissioner's action. Rather, it was relied upon only to show that the Commissioner's calculation of deficiency was not arbitrary. Hearsay evidence inadmissible for its truth value may nonetheless be considered in determining whether a burden of proof should be shifted from the Taxpayer to the Commissioner. *See Avery v.*

*Commissioner*, 574 F.2d 467, 468 (9th Cir. 1978) (hearsay testimony, introduced only to show the reasonableness of an IRS agent's action and not for its truth value, was found by the court to be acceptable evidence upon which to determine that Taxpayer had not proved the Commissioner's determinations to be arbitrary); *Jackson v. Commissioner*, 73 T.C. 394, 400, 1979 WL 3735 (1979) ("The Commissioner's determination may often rest upon hearsay or other inadmissible evidence."). Here, the Tax Court's review of the Robinson testimony, even if it was not admissible in the criminal trial for its truth value, was properly viewed as evidence of a predicate link between the Taxpayer and illegal drug activities, if, indeed, such evidence of a link was necessary to maintain the Commissioner's presumption of correctness.

Once the minimal evidentiary showing is made to support a link between illegal activity and unreported income, the normal burden of proof rules apply, and the Taxpayers must adduce evidence sufficient to rebut the presumptive correctness of the Commissioner's determination by a preponderance of the evidence. *Zuhone v. Commissioner*, 883 F.2d 1317, 1325 (7th Cir.1989); *Anastasato v. Commissioner*, 794 F.2d at 888. The Taxpayers, relying solely upon their contention that no threshold evidentiary link was shown by the Commissioner, have failed to rebut the Commissioner's determination. Thus the determination of the Tax Court should stand.

### III.

■ The Taxpayers have on appeal made an additional argument, not made at trial, that the Commissioner brought forth a criminal charge in the form of a Notice of Deficiency. Because the Grand Jury for the District of Maryland did not hand down an indictment against them for federal narcotics law violations, they have argued, the determinations of unreported income from illegal narcotics sales were brought contrary to the requirements of Rule 6 of the Federal Rules of Criminal Procedure and were unconstitutional.

The Taxpayers' claim that no indictment supported the contention that they were connected to illegal drug activities derived from the fact that the records upon which the Commissioner based the source and application of funds analysis were seized during a District of Maryland Grand Jury investigation that did not result in an indictment. However, the Appellants have conveniently ignored the 1985 indictment and conviction for drug activity rendered previously against Melvin Williams in the Eastern District of Virginia.

Moreover, the Taxpayers' claim is apparently based on the constitutional guarantee under the Fifth Amendment that no person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury. The Taxpayers, however, have confused the Notice of Deficiency with an indictment of or presentment for an "infamous crime" and a criminal proceeding with the civil proceeding here at issue.

The law has long understood an "infamous crime" within the meaning of the Fifth Amendment to be one which can result, upon conviction, in incarceration. *Mackin v. United States*, 117 U.S. 348, 6 S.Ct. 777, 29 L.Ed. 909 (1886).

The Taxpayers were not subject to incarceration as a result of the Notice of Deficiency. They were, admittedly, subject to additions to the tax for fraud and for a substantial underpayment of tax, sanctions which take on some punitive qualities. However, classification of a sanction as punitive does not automatically transform a civil proceeding into a criminal prosecution, nor is a punitive sanction necessarily tantamount to criminal punishment. *See Helvering v. Mitchell*, 303 U.S. 391, 405, 58 S.Ct. 630, 636, 82 L.Ed. 917 (1938) ("additions to the tax" provided in the Internal Revenue Code found to be intended by Congress as civil incidents of the assessment and collection of the income tax). Accordingly, the Taxpayers' contention that the Notice of Deficiency abused the Fifth Amendment Right to an Indictment by Grand Jury because the calculations of unreported income rested in part on an evidentiary link to illegal drug activity for which he had not been indicted is wrong on the law as well as the facts.

In sum, the Tax Court's assessment of deficiency, as well as its additions to tax for fraud and substantial understatement, are hereby

AFFIRMED.