T.C. Memo. 2016-58


UNITED STATES TAX COURT


LUIS ALEJANDRO REY, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 10409-14.                    March 29, 2016.


Luis Alejandro Rey, pro se.

William J. Gregg and Maria F. Di Miceli, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

LAUBER, Judge:  With respect to petitioner's Federal income tax for 2010, the Internal Revenue Service (IRS or respondent) determined a tax deficiency of $56,063, a late-filing addition to tax of $2,783 under section 6651(a)(1), and an

[*2] accuracy-related penalty of $11,213 under section 6662(a).[1] After

concessions, the sole issue for decision is whether the IRS properly determined

omissions from petitioner's gross income by use of a bank deposits analysis. With

certain exceptions noted below, we will sustain respondent's determinations.

FINDINGS OF FACT

The parties submitted a stipulation of facts at trial. We incorporate that

stipulation and the attached exhibits by this reference. Petitioner resided in Vir-

ginia when he filed his petition.

During 2010 petitioner worked as a consultant for the Inter-American De-

velopment Bank (IADB) performing computer-related services. His work entailed

some foreign travel, for example, to IADB meetings overseas. He maintained with

the IADB credit union several accounts, which formed the basis for respondent's

bank deposits analysis. During 2010 petitioner also had a Virginia real estate

license and received in connection with his real estate activity income of $9,343,

which was reported by the payors on three Forms 1099-MISC, Miscellaneous

Income.

---

[1]Unless otherwise indicated, all statutory references are to the Internal
Revenue Code, as amended and in effect for the taxable year in issue, and all Rule
references are to the Tax Court Rules of Practice and Procedure. We round all
monetary amounts to the nearest dollar.

**[\*3]**  Petitioner filed his Form 1040, U.S. Individual Income Tax Return, as "married filing separately."  He received an extension of time until October 15, 2011, to file that return.  Because that day was a Saturday, petitioner's return was due for filing on Monday, October 17.  He filed the return on October 24, 2011, one week late.

Petitioner attached to his Form 1040 a Schedule C, Profit or Loss From Business, reporting income and expenses from his consulting business.  He reported gross receipts of $162,365 and total expenses of $150,181, thus showing a net profit of $12,184.  Upon examination of that return, the IRS allowed deductions in the aggregate amount of $43,263 for legal and professional fees, taxes and licenses, travel, meals, and home office expense.  The IRS disallowed for lack of substantiation deductions in the aggregate amount of $106,918 for returns and allowances, office expense, repairs and maintenance, and supplies.  Petitioner produced no substantiation for any of the latter expenses and conceded at trial that the IRS had correctly disallowed Schedule C expenses in the amount of $106,918.

The IRS determined that petitioner had engaged in a separate Schedule C-2 business as a real estate professional in which he had earned a net profit of $9,343, the aggregate amount reported on the Forms 1099-MISC.  Petitioner conceded at trial that he had earned taxable income in that amount from his real estate activity

**[\*4]** during 2010.  The IRS determined that petitioner was liable for a late-filing addition to tax under section 6651(a)(1) and an accuracy-related penalty under section 6662(a).  Petitioner conceded at trial that he was liable for both.

The only subject of dispute at trial concerned unreported income from petitioner's consulting business.  The notice of deficiency determined, on the basis of the revenue agent's bank deposits analysis, that petitioner had omitted $70,671 of income from this business.[2]  Petitioner contended that certain of the deposits the agent treated as taxable should have been excluded as nontaxable.

At the close of trial the Court ordered one round of seriatim briefs.  Respondent timely filed his brief on January 19, 2016.  Petitioner did not file a post-trial brief.[3]

---

[2]The revenue agent determined omitted income of $80,014 overall.  But because the agent allocated $9,343 of this sum to petitioner's Schedule C-2 real estate business, the omitted income allocable to petitioner's Schedule C-1 consulting business was reduced to $70,671.

[3]When a party fails to file a brief on issues that have been tried, we may consider those issues waived or conceded.  See, e.g., Nicklaus v. Commissioner, 117 T.C. 117, 120 n.4 (2001); Stringer v. Commissioner, 84 T.C. 693, 704-708 (1985), aff'd without published opinion, 789 F.2d 917 (4th Cir. 1986).  We will exercise our discretion not to do so here.

**[*5]**                                    OPINION

I.      Burden of Proof

The IRS' determinations in a notice of deficiency are generally presumed correct.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  The U.S. Court of Appeals for the Fourth Circuit, the appellate venue here absent stipulation to the contrary, has held that the usual presumption of correctness applies in omitted-income cases where the IRS employs a "reasonable method of determining income," such as the bank deposits method.  Williams v. Commissioner, 999 F.2d 760, 763-764 (4th Cir. 1993), aff'g T.C. Memo. 1992-153.  Other courts have required the Commissioner in unreported income cases to establish a "minimal evidentiary showing" connecting the taxpayer with the income-producing activity.  Blohm v. Commissioner, 994 F.2d 1542, 1548-1549 (11th Cir. 1993), aff'g T.C. Memo. 1991-636.  If that threshold showing were required here, respondent met it by introducing bank records establishing that petitioner received (as he concedes) unreported income from his consulting business.  Petitioner thus bears the burden of proving by a preponderance of the evidence that respondent's determinations are arbitrary or erroneous.  See Williams, 999 F.2d at 763 (citing Helvering v. Taylor, 293 U.S. 507, 515 (1935)); Tokarski v. Commissioner, 87 T.C. 74 (1986).

**[*6]** II.      <u>Analysis</u>

Section 61(a) defines gross income as "all income from whatever source derived," including income derived from business. A taxpayer must maintain books and records establishing the amount of his or her gross income. <u>See</u> sec. 6001. When a taxpayer does not keep accurate books of account, the IRS may determine his income "under such method as, in the opinion of the Secretary, does clearly reflect income." Sec. 446(b); <u>see</u> <u>Petzoldt v. Commissioner</u>, 92 T.C. 661, 693 (1989). And where the taxpayer has unexplained bank deposits, the IRS may employ the bank deposits method to estimate his income. <u>Estate of Hague v. Commissioner</u>, 132 F.2d 775 (2d Cir. 1943), <u>aff'g</u> 45 B.T.A. 104 (1941); <u>Estate of Mason v. Commissioner</u>, 64 T.C. 651, 657 (1975), <u>aff'd</u>, 566 F.2d 2 (6th Cir. 1977). The IRS has great latitude in reconstructing a taxpayer's income, and the reconstruction "need only be reasonable in light of all surrounding facts and circumstances." <u>Petzoldt</u>, 92 T.C. at 687.

Bank deposits are prima facie evidence of income. The bank deposits method starts with the presumption that all money deposited in a taxpayer's bank account during a given period constitutes taxable income. <u>Price v. United States</u>, 335 F.2d 671, 677 (5th Cir. 1964). This presumption is rebutted to the extent the deposits are shown to include nontaxable amounts, and "the Government must

**[*7]** take into account any non-taxable source * * * of which it has knowledge." Ibid.; DiLeo v. Commissioner, 96 T.C. 858, 868 (1991), aff'd, 959 F.2d 16 (2d Cir. 1992).

After the IRS reconstructs a taxpayer's income and determines a deficiency, the taxpayer bears the burden of proving that the IRS' implementation of the bank deposits analysis was unfair or inaccurate. See Clayton v. Commissioner, 102 T.C. 632, 645 (1994); DiLeo, 96 T.C. at 871-872. The taxpayer may do so by showing (among other things) that certain deposits came from nontaxable sources. See Clayton, 102 T.C. at 645. Nontaxable sources include funds attributable to inter-account bank transfers and returned checks, as well as "loans, gifts, inheritances, or assets on hand at the beginning of the taxable period." Burgo v. Commissioner, 69 T.C. 729, 743 n.14 (1978) (quoting Troncelliti v. Commissioner, T.C. Memo. 1971-72).

The revenue agent employed the bank deposits method to reconstruct petitioner's income. He used petitioner's account statements (which are part of the record) to prepare schedules listing all deposits. After eliminating nontaxable receipts of which he had knowledge, the revenue agent prepared, and provided to petitioner, schedules that initially determined unreported income in excess of $150,000.

**[*8]**   In response petitioner provided the revenue agent with a spreadsheet listing $114,170 of alleged nontaxable deposits.  This list, which was included in the revenue agent's report, comprised inter-account transfers of $81,120, a returned check of $2,050, an alleged loan of $1,000 from a coworker, and an alleged loan of $30,000 from New York Life.  The revenue agent agreed that all of these deposits, with the exception of the $30,000 item, should be treated as nontaxable and revised his bank deposits analysis accordingly.  This reduced the unreported income from petitioner's Schedule C-1 consulting business to $70,671.

Petitioner subsequently supplied the revenue agent with a revised spreadsheet listing $118,081 of alleged nontaxable deposits.  This list, which was introduced into evidence at trial, was substantially identical to the previous list, except that it included two additional items:  a deposit of $689, which petitioner alleged was a "transfer from coworker account," and a deposit of $3,222, which petitioner alleged was "per diem paid by IADB for overseas expenses."  The revenue agent declined, for lack of substantiation, to treat either of these additional items as a nontaxable deposit.

At trial petitioner did not identify, or provide any evidence concerning, any other deposits that he alleged to be nontaxable.  Respondent conceded during trial that petitioner had supplied enough documentation concerning the loan from New

[*9] York Life to treat this $30,000 deposit as nontaxable. And respondent conceded in his opening brief that petitioner's unreported income should be reduced by $689 because the deposit to which petitioner refers had been counted twice.

This leaves the proper treatment of the $3,222 deposit as the only issue for this Court to decide. Petitioner contends that this sum constituted reimbursement from IADB for expenses he incurred during overseas travel. We agree with respondent that petitioner did not carry his burden of proof. He produced no evidence concerning IADB's reimbursement policy, no evidence that the $3,222 constituted reimbursement, and no evidence substantiating that he incurred $3,222 of expenses to which the alleged reimbursement corresponded.

We accordingly find that petitioner received during 2010 unreported income from his Schedule C-1 consulting business of $39,982, that is, $70,671 as determined in the notice of deficiency minus ($30,000 + $689). On the basis of petitioner's concessions, we sustain respondent's other adjustments to his 2010 income and expenses and conclude that he is liable for a late-filing addition to tax and an accuracy-related penalty in amounts to be determined. To reflect the foregoing,

Decision will be entered under

Rule 155.