# United States Tax Court

T.C. Memo. 2022-114

RICHARD SHOWALTER,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

_____

Docket No. 13116-18.                          Filed November 30, 2022.

_____

Richard Showalter, pro se.

*William J. Gregg* and *Bartholomew Cirenza*, for respondent.


## MEMORANDUM OPINION

LAUBER, *Judge*: Currently before the Court is respondent's Motion for Partial Summary Judgment. That Motion is addressed to the sole remaining issue in the case—whether petitioner has additional unreported income for 2013 of $102,885, calculated on the basis of a bank deposits analysis. We resolve this issue in respondent's favor.

### *Background*

There is no dispute as to the following facts, which are drawn from the parties' Joint Stipulation of Facts, the attached Exhibits, and the Stipulations of Settled Issues. Petitioner resided in Virginia when he timely petitioned this Court.

Petitioner is the founder and sole member of Real Estate Consulting Services (RECS), a single-member limited liability company that he operated during 2013 as a sole proprietorship. RECS had only one bank account, which it maintained at Wells Fargo Bank, N.A. (Wells Fargo).

[*2]    Petitioner did not file a Federal income tax return for 2013. The Internal Revenue Service (IRS or respondent) accordingly prepared a substitute for return (SFR) as authorized by section 6020(b).[1]  On the basis of information submitted by third-party payors, the IRS determined that petitioner during 2013 received gross income of $367,977, consisting of business income of $367,103, gambling winnings of $833, and interest of $41.  Petitioner made no estimated tax payments for 2013 and had no Federal income tax withheld by the payors of this income.

On April 9, 2018, the IRS timely issued petitioner a notice of deficiency for 2013 on the basis of the SFR.  Allowing petitioner the standard deduction and the personal exemption to which he was entitled, the notice determined a deficiency of $122,857, plus additions to tax under sections 6651(a)(1) and (2) and 6654.

Petitioner timely petitioned this Court for redetermination.  Proceeding pro se, he contended that the IRS overstated his taxable income because it had allowed him no deductions for his business expenses.  On April 10, 2019, the parties filed a Stipulation of Settled Issues, agreeing that petitioner had received the items of unreported income listed in the notice of deficiency.  The parties further stipulated that the business income of $367,103, properly reportable on Schedule C, Profit or Loss From Business, consisted of two payments to RECS shown on Forms 1099–MISC, Miscellaneous Income, supplied by the payors.

The case was called from the calendar at the Court's April 15, 2019, Washington, D.C., trial session.  Petitioner expressed a desire to subpoena RECS' bank records with a view to substantiating his alleged Schedule C expenses.  Respondent did not object, and the Court continued the case and retained jurisdiction.

On June 7, 2019, respondent filed a status report representing that he had subpoenaed RECS' bank records from Wells Fargo.  On the basis of those records and other documentation petitioner supplied, the parties filed on November 14, 2019, a Supplemental Stipulation of Settled Issues.  The parties thereby agreed that petitioner for 2013 was entitled to Schedule C deductions totaling $199,958 and itemized deductions (before any applicable limitation) of $50,652.  Petitioner conceded

---

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[*3] liability for applicable self-employment tax and for additions to tax set forth in the notice of deficiency, in amounts to be recalculated.

Upon review of the bank records respondent also determined that RECS during 2013 had received income exceeding the $367,103 reported on the two Forms 1099–MISC. Employing a bank deposits analysis respondent determined total taxable deposits of $469,988, indicating additional unreported income of $102,885 ($469,988 minus $367,103). The parties agreed that the correct amount of RECS' gross income for 2013 was the sole remaining issue in the case.

Petitioner believed that one or more bank deposits, allegedly relating to a real estate transaction, might be nontaxable. On April 20, 2021, we set the case for a document subpoena hearing to enable respondent to issue a subpoena to the settlement agent who closed the real estate sale. The subpoenaed party supplied the documents and the hearing was canceled.

On September 2, 2021, the parties filed a Stipulation of Facts to which were attached, among other things: (1) copies of the 2013 bank statements for the Wells Fargo account, (2) copies of the 2013 deposit slips for that account, (3) a business records certificate from Wells Fargo's custodian of records, and (4) a copy of the settlement statement for the real estate transaction to which petitioner had referred. The settlement statement related to an August 6, 2013, sale of real estate owned by petitioner, and it showed cash due to seller of $95,002.

On May 27, 2022, respondent filed a Motion for Partial Summary Judgment, seeking a ruling on the unreported income issue. We directed petitioner to respond to that Motion by July 8, 2022, and subsequently gave him an additional 90 days to respond. He did not respond, by the due date or subsequently, to the Motion or the Court's order.

*Discussion*

A.   *Summary Judgment Standard*

The purpose of summary judgment is to expedite litigation and avoid costly, unnecessary, and time-consuming trials. *See FPL Grp., Inc. & Subs. v. Commissioner*, 116 T.C. 73, 74 (2001). We may grant partial summary judgment regarding an issue as to which there is no genuine dispute of material fact and a decision may be rendered as a matter of law. Rule 121(b); *Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994). In deciding whether

**[\*4]** to grant summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the nonmoving party. *Sundstrand Corp.*, 98 T.C. at 520. However, the nonmoving party may not rest upon mere allegations or denials of his pleading but instead must set forth specific facts showing that there is a genuine dispute for trial. Rule 121(d); *see Sundstrand Corp.*, 98 T.C. at 520.

Because petitioner did not respond to the Motion for Partial Summary Judgment, we could enter a decision against him for that reason alone. *See* Rule 121(d). We will nevertheless consider the Motion on its merits.

B.   *Burden of Proof*

The IRS's determinations in a notice of deficiency are generally presumed correct. Rule 142(a); *Welch v. Helvering*, 290 U.S. 111, 115 (1933). However, the burden of proof shifts to the Commissioner with respect to any "new matter" or "increase[] in deficiency." Rule 142(a); *see Turner v. Commissioner*, 68 T.C. 48, 50 (1977). Respondent's allegation of unreported Schedule C income, in addition to the $367,103 reflected on the two Forms 1099–MISC, is a "new matter" and may generate an increased deficiency. *See Porter v. Commissioner*, T.C. Memo. 2015-122, 110 T.C.M. (CCH) 1, 5. Respondent thus bears the burdens of production and persuasion with respect to the unreported income issue remaining for decision.[2]

In unreported income cases the Commissioner must first establish a "minimal evidentiary showing" connecting the taxpayer to the income-producing activity, *see Blohm v. Commissioner*, 994 F.2d 1542, 1548–49 (11th Cir. 1993), *aff'g* T.C. Memo. 1991-636, or demonstrate that the taxpayer actually received unreported income, *see Edwards v.*

---

[2] Section 6214(a) permits the Tax Court to redetermine an increased deficiency "if claim therefor is asserted by the Secretary at or before the hearing or a rehearing." *See Henningsen v. Commissioner*, 243 F.2d 954, 959 (4th Cir. 1957) (according "hearing" a broad meaning to "include the whole proceeding down to the final decision"), *aff'g* 26 T.C. 528 (1956). Respondent did not file an amended answer setting forth the results of his bank deposits analysis. But petitioner was timely apprised of this analysis: He informed respondent of deposits he thought might be nontaxable and stipulated that the unreported income question was the sole issue remaining for decision. We will therefore treat respondent as having timely asserted this new matter and any increased deficiency that may be shown in the parties' Rule 155 computations. *See* Rule 41(b)(1) ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.")

[*5] *Commissioner*, 680 F.2d 1268, 1270 (9th Cir. 1982); *see also Williams v. Commissioner*, 999 F.2d 760, 763–64 (4th Cir. 1993), *aff'g* T.C. Memo. 1992-153. Respondent satisfied his burden of production by introducing records from the Wells Fargo account, the sole bank account for petitioner's Schedule C business, establishing that RECS had unexplained deposits in addition to the those corresponding to amounts shown on the Forms 1099–MISC.

Once the Commissioner makes the required threshold showing, the burden normally shifts to the taxpayer to prove by a preponderance of the evidence that the Commissioner's determinations are arbitrary or erroneous. *See Williams v. Commissioner*, 999 F.2d at 763; *Catlett v. Commissioner*, T.C. Memo. 2021-102, 122 T.C.M. (CCH) 147, 149. In this case, because the item of unreported income is a "new matter," the burden of proof rests on the Commissioner.

C.    *Analysis*

Section 61(a) defines gross income as "all income from whatever source derived," including income derived from business. A taxpayer must maintain books and records establishing the amount of his gross income. *See* § 6001. When a taxpayer does not keep accurate books of account, the IRS may determine his income "under such method as, in the opinion of the Secretary, does clearly reflect income." § 446(b); *see Petzoldt v. Commissioner*, 92 T.C. 661, 693 (1989). And where the taxpayer has unexplained bank deposits, the IRS may employ the bank deposits method to estimate his income. *Estate of Hague v. Commissioner*, 132 F.2d 775 (2d Cir. 1943), *aff'g* 45 B.T.A. 104 (1941); *Estate of Mason v. Commissioner*, 64 T.C. 651, 657 (1975), *aff'd*, 566 F.2d 2 (6th Cir. 1977). The IRS has great latitude in reconstructing a taxpayer's income, and the reconstruction "need only be reasonable in light of all surrounding facts and circumstances." *Petzoldt*, 92 T.C. at 687.

Bank deposits are prima facie evidence of income. The bank deposits method starts with the presumption that all money deposited in a taxpayer's bank account during a given period constitutes taxable income. *Price v. United States*, 335 F.2d 671, 677 (5th Cir. 1964). This presumption is rebutted to the extent the deposits are shown to include nontaxable amounts, and "the Government must take into account any non-taxable source . . . of which it has knowledge." *Ibid.*; *DiLeo v. Commissioner*, 96 T.C. 858, 868 (1991), *aff'd*, 959 F.2d 16 (2d Cir. 1992). Nontaxable sources include funds attributable to interaccount bank transfers and returned checks, as well as "loans, gifts, inheritances, or assets

[*6] on hand at the beginning of the taxable period." *Burgo v. Commissioner*, 69 T.C. 729, 743 n.14 (1978) (quoting *Troncelliti v. Commissioner*, T.C. Memo. 1971-72, 30 T.C.M. (CCH) 297, 301).

Respondent employed the bank deposits method to reconstruct petitioner's income. After obtaining copies of RECS' bank statements, respondent used the statements (which are a part of the record) to prepare schedules listing all deposits during 2013. The bank records show total deposits of $594,190. From that sum respondent subtracted nontaxable items in the aggregate amount of $124,202. These consisted of $27,500 in loan proceeds, $1,700 of proceeds from a line of credit, and $95,002 of proceeds from the sale of real estate. This yielded taxable deposits of $469,988 ($594,190 minus $124,202). From the taxable deposits respondent subtracted the $367,103 of Schedule C income determined in the notice of deficiency, yielding unreported income of $102,885 ($469,988 minus $367,103).

The only flaw that petitioner discerned in respondent's bank deposits analysis was the alleged failure to exclude nontaxable real estate proceeds. Respondent subpoenaed the closing documents from the August 6, 2013, sale in order to investigate that claim. The closing documents showed cash due to petitioner of $95,002. That sum corresponds precisely to the $95,002 deposit made to RECS' account on August 7, 2013. Respondent properly subtracted that deposit as a nontaxable item.

Petitioner has alleged no other error in respondent's bank deposits analysis. We conclude that respondent has carried his burden of proving that his implementation of the bank deposits method was "reasonable in light of all surrounding facts and circumstances." *Petzoldt*, 92 T.C. at 687. We will therefore grant his Motion for Partial Summary Judgment and sustain his determination of $102,885 of additional unreported income for 2013.

To implement the foregoing,

*An appropriate order will be issued, and decision will be entered under Rule 155.*