# United States Tax Court

T.C. Memo. 2023-15

TANISHA TRICE,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————————

Docket No. 20398-19.                          Filed February 13, 2023.

————————

In 2016–18 P claimed and received disability benefits from the Social Security Administration ("SSA"), but over that period her eligibility for benefits was reviewed, corrected, and re-reviewed. In 2017 the SSA awarded to P disability benefits that it reported on Form SSA–1099, "Social Security Benefit Statement". It reported a gross amount of benefits of $17,164 and "deductions" therefrom of $3,298 (i.e., $487 in Medicare Part B premium and $2,811 in "deductions for work or other adjustments"). Form SSA–1099 also reported that P had repaid to the SSA $1,529 of her 2017 benefits, and the form reported $15,635 in "net benefits" for 2017 (i.e., the gross benefits minus those repayments). The SSA paid to P $13,866—i.e., the total of $17,164 minus the "deductions" of $3,298.

On her income tax return for 2017, P reported wages from employment and reported no disability benefits. She claimed a $2,000 Lifetime Learning credit pursuant to I.R.C. § 25A(a)(2).

R issued to P a notice of deficiency, which determined that P should have reported Social Security benefits of $15,635 (the "net benefits" on Form SSA–1099) and that under I.R.C. § 25A(d) the resulting increase in her

**[\*2]** modified adjusted gross income reduced the amount of her Lifetime Learning credit. P petitioned the Tax Court.

R moved for summary judgment, asserting that under I.R.C. § 86(a)(2)(B) 85% of P's "net benefits" of $15,635 (i.e., $13,290) was taxable income, and that her Lifetime Learning credit should be reduced accordingly. P objected, admitting that she had received and should have reported 85% of only the payments of $13,866 (i.e., $11,786) that she actually received and contending that the Lifetime Learning credit should not be reduced.

*Held*: The disability benefits that P received must be included in income; but the reported disability benefits that consisted of "deductions" have not been explained, and as to them P raised a "reasonable dispute" under I.R.C. § 6201(d) and a "genuine dispute as to any material fact" under Tax Court Rule 121(b) by showing that she did not receive them.

*Held, further*, P's Lifetime Learning credit must be reduced to the extent that the disability benefits cause her modified adjusted gross income to trigger reductions under I.R.C. § 25A(d).

———————

Tanisha Trice, pro se.

*Ka Tam* and *Bartholomew Cirenza*, for respondent.

MEMORANDUM OPINION

GUSTAFSON, *Judge*: On August 19, 2019, the Internal Revenue Service ("IRS") issued a "Notice of Deficiency" ("NOD") for the taxable year 2017 to petitioner, Tanisha Trice, pursuant to section 6212(a).[1] The

———————

[1] Unless otherwise indicated, statutory references in this opinion are to the Internal Revenue Code (Title 26 of the United States Code) as in effect at the relevant times, and references to Rules are to the Tax Court Rules of Practice and Procedure. Some dollar amounts are rounded. Each citation in this Opinion to a "Doc." refers to a document so numbered in the Tax Court docket record of this case, and a pinpoint

**[*3]** issue for decision is whether (as the NOD determined) Ms. Trice received from the Social Security Administration ("SSA") taxable Social Security disability benefits that she failed to report on her income tax return. The Commissioner filed a motion for summary judgment, which we will grant in part and deny in part.

## *Background*

No genuine dispute has been raised as to the following facts, except as noted below.

### *Social Security benefits and "deductions"*

In 2017 the SSA reported on Form SSA–1099, "Social Security Benefit Statement", that Ms. Trice was awarded disability benefits totaling a gross amount of $17,164. No federal taxes were withheld from that total. Doc. 27 at 32; Doc. 68 at 23. However, the SSA reduced this gross amount by a total of $3,298 of what it called "deductions". (These are not "deductions" for income tax purposes.) These deductions consisted of $487 in Medicare Part B premium and $2,811 in "deductions for work or other adjustments". These other "deductions" of $2,811 are, as far as we can tell, not further explained in our record.[2] The total of $17,164 minus the "deductions" of $3,298 should yield payments of $13,866, and they did, as we show below.

### *SSA's payment of the benefits*

The SSA did pay to Ms. Trice the balance of $13,866 in 2017, and it did so by direct deposits to her bank account on the following dates in the following amounts:

---

citation therein refers to the pagination as generated in the portable document format file.

[2] The only mention of these "deductions" of $2,811 in the Commissioner's brief characterizes them as "withheld" and quotes Form SSA–1099 to call them "Deductions for work and other adjustments". *See* Doc. 66 at 4 n.2. We do not see in our record any support for characterizing them as being "withheld" from one's benefit rather than reducing one's benefit.

[*4]

| | | |
|---|---|---|
| | 10/27/2017 | $11,756 |
| | 11/13/2017 | 1,055 |
| | 12/01/2017 | 1,055 |
| | Total | $13,866 |

That is, the SSA reports having paid a total of $13,866, Doc. 68 at 47; and Ms. Trice's bank reports having received $13,866, Doc. 67 at 79–80, i.e., the SSA's total of $17,164 minus its "deductions" of $3,298. In her response to the Commissioner's motion for summary judgment, Ms. Trice now admits having received these payments. Doc. 70 at 2.

*Repayment and net benefits*

In that same year Ms. Trice had repaid to the SSA $1,529 of her 2017 benefits, yielding $15,635 in "net benefits" for 2017 (i.e., gross benefits of $17,164 minus repaid benefits of $1,529 equals net benefits of $15,635). On Form SSA–1099 the SSA advised Ms. Trice: "Use $15635.00 from Box 5 below . . . to see if any part of your benefits may be taxable on your federal income tax return." Doc. 67 at 47. Form SSA–1099 reported that "nontaxable payments" were zero. *See also* Doc. 27 at 32.

*Ms. Trice's tax return*

Ms. Trice filed her 2017 Form 1040, "U.S. Individual Income Tax Return", in April 2018. Doc. 68 at 12–21. She did not report the Social Security benefits on her return; rather, Line 20a, "Social security benefits", was left blank. On line 7 she reported wages of $52,713 (as to which there is no dispute); on line 37 she reported adjusted gross income ("AGI") of $50,450; on line 50 she reported "Education credits" of $2,000; and on line 63 she reported a "total tax" of $3,758. She reported "total payments" of $4,436 and claimed a refund of $678.

*IRS examination*

The IRS received the SSA's report of Ms. Trice's 2017 Social Security benefits. Apparently, the IRS compared that report to her 2017 return and noted her non-reporting of the disability benefits. The IRS increased her taxable income by $13,290 (i.e., 85% of her "net benefits" of $15,635) and, because of the resulting increase in her AGI, reduced the amount of education credit to which she was entitled (i.e., from

[*5] $2,000 down to $452). The IRS issued an NOD to Ms. Trice on August 19, 2019, in which it determined, on the basis of those corrections, a tax deficiency of $4,860 for 2017.

*Tax Court proceedings*

Ms. Trice timely filed her Tax Court petition on November 15, 2019.[3] The petition "dispute[s] the inclusion of social security income" but is ambiguous as to whether it contends that she did not receive the benefits or instead contends that benefits she did receive are not taxable. In a later filing, she explained:

> The income tax deficiency alleged by Respondent resulted from an overpayment [of benefits] made by the Social Security Administration (see exhibit A).[4] Petitioner had been working with the Social Security Administration since 2015 to get the issue resolved and to determine the actual amount of the overpayment, as the alleged amount stated as an overpayment that is alleged in the tax deficiency continues to change. The Social Security Administration has informed Petitioner that the amount alleged in Respondent's exhibits is still in question and it has not been determined how much was sent to Petitioner. [Doc. 28, para. 2(a).]

We called the case for trial at a "remote" session (conducted via Zoomgov.com) on December 16, 2021. At that session before the trial

---

[3] Ms. Trice's address on her petition indicates that, under section 7482(b)(1)(A), venue for an appeal in this case would presumptively be the U.S. Court of Appeals for the Fourth Circuit.

[4] Ms. Trice's Exhibit A is a letter from the SSA dated February 28, 2018. The SSA had previously demanded repayments in February and August 2017, *see* Doc. 27 at 29–30, but its lump-sum payment of $11,756 to Ms. Trice in October 2017 shows that as of that time it had determined she was entitled to benefits. Form SSA–1099 states that the total of $17,164 "includes $4763.20 paid in 2017 for 2016", *see* Doc. 27 at 32, so we infer that by October 2017 the SSA had determined she was entitled to retroactive benefits. We note that the subsequent February 2018 letter (Exhibit A) stated that the SSA "looked at your work and earnings for June 2012 through February 2018. Our review shows that, because of your work, you may not be eligible for disability payments." Payments that Ms. Trice may have received or repaid in 2018 or thereafter are not at issue in this case, which concerns only 2017.

[*6] started, Ms. Trice made specific allegations, Doc. 38 at 6–7, about her non-receipt of the Social Security benefits:

> Based on the bank statements that I have, I received two payments in 2017, one for $661.50 and the other one is for 645.50,[5] which is listed in my exhibits. And the last payment was in February of 2017. And it also matches the documentation that I received from Social Security, which they were claiming.

On the strength of that information, we ruled "that Ms. Trice has raised a 'reasonable dispute' about the possible inaccuracy of the SSA's information return, so that the Commissioner 'shall have the burden of producing reasonable and probative information . . . in addition to such information return.' I.R.C. sec. 6201(d)."[6] Doc. 37. We granted Ms. Trice's motion for continuance and set a routine and schedule for further discovery to be conducted.

After conducting discovery to obtain records of the SSA and of Ms. Trice's bank, the Commissioner filed a motion for summary judgment. Using those records, his motion shows that:

- for 2017 the SSA reported gross benefits of $17,164, subject to "deductions" of $3,298 (yielding payments of $13,866);

- the SSA reported that Ms. Trice repaid to the SSA $1,529 of her 2017 benefits, yielding $15,635 in "net benefits" for 2017;

- that Ms. Trice received from the SSA amounts totaling $13,866 that were deposited into her bank account in 2017; and

- that the NOD determined (1) that her taxable income for 2017 should be increased by 85% of the net benefits of $15,635, i.e., by $13,290, and (2) that her education credit should be reduced because of the increase in her income.

---

[5] Ms. Trice's bank statements do show deposits of SSA payments of $661.50 on December 30, 2016, and of $645.50 on February 1, 2017. Doc. 67 at 73–74. The latter payment might increase her 2017 income tax liability, but it was evidently not included in the total reported on Form SSA–1099, and the Commissioner does not raise this as an issue, so we do not consider it further.

[6] Section 6201(d) is discussed below in Part I.B.

**[*7]** Ms. Trice opposed the motion. She now admits that in 2017 she did receive from the SSA payments of $13,866, but she contends that the amount taxable to her is 85% of that amount (and not 85% of the "net benefits" of $15,635). She also contends that the NOD erred by reducing her education credit.

## *Discussion*

I.  *Applicable legal principles*

To resolve the disputed issues—i.e., the amount of Social Security benefits that is taxable to Ms. Trice and the amount of the Lifetime Learning credit to which she is entitled—we refer to the following legal principles.

A.  *Summary judgment*

The purpose of summary judgment is to expedite litigation and avoid unnecessary trials. *Fla. Peach Corp. v. Commissioner*, 90 T.C. 678, 681 (1988). We may grant a motion for summary judgment when there is no genuine dispute of material fact and a decision may be rendered as a matter of law. Rule 121(b); *Elec. Arts, Inc. v. Commissioner*, 118 T.C. 226, 238 (2002).

The moving party bears the burden of presenting evidence to "show that there is no genuine dispute as to any material fact and that a decision may be rendered as a matter of law", Rule 121(b); and if the movant does so, then the opposing party "must set forth specific facts showing that there is a genuine dispute for trial", Rule 121(d). In determining the presence or absence of a genuine dispute, the Court will view factual material and draw inferences in the light most favorable to the nonmoving party. *Dahlstrom v. Commissioner*, 85 T.C. 812, 821 (1985). As we consider the Commissioner's motion for summary judgment, we therefore will draw inferences in favor of Ms. Trice.

B.  *Unreported income*

Where the Commissioner alleges that a taxpayer failed to report income, he must "provide some predicate evidence connecting the taxpayer to the charged activity" before the presumption of correctness attaches to his determination. *Gerardo v. Commissioner*, 552 F.2d 549, 554 (3d Cir. 1977), *aff'g in part, rev'g in part* T.C. Memo. 1975-341. Once the Commissioner connects the taxpayer with the unreported income, then at trial the taxpayer would bear the burden of proving that she did

**[\*8]** not receive the income, *see Williams v. Commissioner*, 999 F.2d 760, 763 (4th Cir. 1993), *aff'g* T.C. Memo. 1992-153; *Walker v. Commissioner*, 757 F.2d 36, 38 (3d Cir. 1985), *rev'g and remanding* T.C. Memo. 1983-538; *see also* Rule 142(a), or, in response to a motion for summary judgment, the taxpayer's burden would be to raise a genuine dispute as to her receipt of the income. The Commissioner has shown, and Ms. Trice has admitted, that she received payments from the SSA totaling $13,866, so that amount is not subject to "genuine dispute". The parties agree that, pursuant to section 86(a)(2)(B), 85% of those Social Security benefits is taxable.

However, the Commissioner contends that the unreported income is a greater amount—namely, $15,635, which is $1,769 greater than the $13,866 that Ms. Trice admits. As to this additional amount, the Commissioner does not allege that the SSA actually paid it to Ms. Trice but rather alleges that it was a portion of a benefit award that was "deduct[ed from her benefits] for work or other adjustments". As to that unpaid, "deducted" portion of the benefits, the Commissioner relies on Form SSA–1099 to show that it was in fact income to Ms. Trice even though it was admittedly not paid to her. As we noted above, such reliance on an information return implicates section 6201(d), which provides:

> In any court proceeding, if a taxpayer asserts a reasonable dispute with respect to any item of income reported on an information return . . . and the taxpayer has fully cooperated with the Secretary (including providing, within a reasonable period of time, access to and inspection of all witnesses, information, and documents within the control of the taxpayer as reasonably requested by the Secretary), the Secretary shall have the burden of producing reasonable and probative information concerning such deficiency in addition to such information return.

That is, when determining income, the IRS may rely on a third-party payor's "information return" (such as Form 1099). *See, e.g., Cabirac v. Commissioner*, 120 T.C. 163, 166–67 (2003), *aff'd per curiam without published opinion*, 2004 WL 7318960 (3d Cir. Feb. 10, 2004). But if a taxpayer "asserts a reasonable dispute" as to an income item reported on such a return, the Commissioner must "produc[e] reasonable and probative information . . . in addition to such information return." § 6201(d). We discuss the effect of section 6201(d) below in Part II.A.2.

**[*9]** C. *Lifetime learning credit*

Section 25A(a)(2) provides for a "Lifetime Learning Credit" equal to 20% of as much as $10,000 of certain education-related expenses, § 25A(c)(1)—i.e., a credit of up to a maximum of $2,000. This credit is claimed on Form 8863, "Education Credits (American Opportunity and Lifetime Learning Credits)", attached to Form 1040. Section 25A(d), however, as in effect for 2017, limits and reduces the amount of the otherwise available credit—

> by the amount . . . which bears the same ratio to the amount which would be so taken into account as—
>
> (A) the excess of—
>
> > (i) the taxpayer's modified[7] adjusted gross income for such taxable year, over
> >
> > (ii) $40,000 ($80,000 in the case of a joint return), bears to
>
> (B) $10,000 ($20,000 in the case of a joint return).

Form 8863, as prescribed for 2017, implemented this limitation on lines 13–18, which began to phase out the credit for a single taxpayer with AGI of $56,000 or more and phased it out entirely when AGI equals $66,000 or more. We discuss this issue below in Part II.B.

II. *Analysis*

A. *Unreported Social Security benefits*

1. *Conceded amount*

On her 2017 return, Ms. Trice reported zero income from Social Security benefits. She now admits that, as her bank records show, she received benefits of $13,866, and she admits that 85% of that amount (i.e., $11,786) constitutes taxable income. Thus, given the absence of any genuine dispute of material fact, the Commissioner is entitled to partial summary judgment to that extent.

---

[7] The modifications, which are described in section 25A(d)(3), are not relevant here.

**[\*10]**    2.    *Disputed amount*

As to an additional amount, a dispute does exist.  The Form SSA–1099 shows a gross benefit of $17,164 for 2017 but also shows Ms. Trice's 2017 repayments of $1,529, yielding $15,635 in "net benefits" for 2017; and the Commissioner treats that $15,635 in "net benefits" (not the $13,866 actually paid) as the relevant amount, of which 85% (i.e., $13,290, not just $11,786) would be taxable.  However, the Form SSA–1099 also shows "deductions" totaling $3,298—i.e., $487 in Medicare Part B premium and $2,811 in "deductions for work or other adjustments".

The Commissioner treats these "deductions" as if they were "withheld" from benefits otherwise due and as if they did not reduce the reportable amount of those benefits.  His approach is apparently not inconsistent with the instructions on Form SSA–1099, which do state: "Use $15635.00 . . . to see if any part of your benefits may be taxable on your federal income tax return."  Doc. 67 at 47.  Withholding from paychecks is a common phenomenon that often does not reduce the taxable amount.  Most typically, the withholding of federal income tax and Social Security tax does not reduce the employee's taxable wages; rather, that withholding is used (for the employee's sake) to prepay the tax that will be due when her return is later filed.  The relevant information return—the employee's Form W–2, "Wage and Tax Statement"—reports the gross wages and the tax withholding, but the withholding of the tax does not affect the taxability of the gross amount of the wages.    Perhaps using this withholding analogy, the Commissioner treats Ms. Trice's entire "net benefits" of $15,635 (i.e., net after repayments) as taxable (to the extent of 85%), and he does not reduce that amount by the supposed "withh[olding]" of the "deductions".

The Commissioner's approach may be appropriate for the Medicare premium.    That $487 premium could indeed have been "withheld" from benefits otherwise due to Ms. Trice and then paid over (for her sake), thus leaving her taxable disability benefit unreduced by the withheld premium.

However, neither the Commissioner's motion nor the Form SSA–1099 shows what the other $2,811 of "deductions" was nor whether the Commissioner's approach achieves the correct tax treatment.  The other "deductions" that SSA supposedly "withheld" here were *not* income or employment taxes.  Rather, the form is explicit that zero taxes were

**[*11]** withheld; and the amounts are described as "deductions for work or other adjustments", which is not a sufficient explanation.

SSA correspondence did explain to Ms. Trice that "because of your work, you may not be eligible for disability payments for: July 2016 and continuing. . . . You can still give us more information about your work." Doc. 27 at 26; *see also id.* at 27 ("Your disability ends if your work activity shows your ability to do substantial work"). It thus seems entirely possible that the phrase "deductions for work" indicates that, because of wages Ms. Trice was able to obtain from other work, the SSA reduced the disability benefit that it would otherwise have allowed her. Because she earned (taxable) wages from other work, the SSA reduced her award by $2,811 and did not pay her that portion (nor withhold it and pay it over for her sake to some other obligation, such as taxes or Medicare premium) because she was not "eligible" for that amount of benefit. If that is so, then it would seem she should not be taxed on any income beyond what she actually received from the SSA.

We do not so hold. We hold, rather, that for purposes of section 6201(d) the Commissioner has not "produc[ed] reasonable and probative information . . . in addition to" the Form SSA–1099 to show Ms. Trice's receipt of more than $13,866 and that for purposes of Rule 121(b) he has not "show[n] that there is no genuine dispute as to any material fact and that a decision may be rendered as a matter of law". We will therefore deny his motion in part as to the Social Security disability benefits greater than $13,866.

B.      *Reduction in Lifetime Learning credit*

Ms. Trice argues that she "was entitled to claim the full credit of $2000", Doc. 70 at 3, without any mention of the limitation imposed by section 25A(d). Her tax return reported zero Social Security benefits and reported AGI of only $50,450 (an amount lower than $56,000). Consequently, when she filled out Form 8863, she computed on lines 13–18 no reduction of the $2,000 maximum credit. If she had received no taxable Social Security benefits, then that would apparently have been the correct credit amount. But she admits she did receive taxable disability benefits, and that changes the equation.

If the Commissioner ultimately proves to be right as to $15,635 of disability benefits (of which the 85% taxable portion would be $13,290), then Ms. Trice's AGI would be $63,740—an amount that is greater than $56,000 and less than $66,000 and that therefore triggers a partial

[*12] reduction of the credit.  Ms. Trice disputes his contention; but as we have shown, she now admits that she did receive benefits of a lesser amount—i.e., $13,866—with an 85% taxable portion of $11,786.  Even if she is right about the amount of benefits, her reported AGI of $50,450 would be increased by $11,786 to an AGI of $62,236, still triggering a partial reduction of the credit.  We therefore will grant the Commissioner's motion for partial summary judgment in that the credit must be reduced pursuant to section 25A(d), but we will deny the motion in part as to the precise amount, until the dispute about the "deductions" from her disability benefits has been resolved.

III.    *Conclusion*

Concerning income from Social Security disability benefits, we will grant the Commissioner's motion for summary judgment in part as to the conceded benefits of $13,866, but we will deny it in part as to the additional disputed benefits.  Concerning the Lifetime Learning credit, we will grant the motion in part as to the reduction pursuant to section 25A(d), but we will deny it in part as to the precise amount of the reduction.  To effect this result,

*An appropriate order will be issued.*